No. 68.—THOMAS J. WARTHEN, plaintiff in error, *vs.* JEPHTHA BRANTLEY and MOSES DANIEL, defendants.

[1.] A bill that is demurrable for multifariousness, may be dismissed by the Court, of its own accord.

[2.] This objection is not favored by the Courts, especially where the defendant is the same.

[3.] Where the bill of A charges that A, B, and C entered into partnership and did business for one year, at which time C withdrew, and A and B continued the business, no settlement having been made; that B was the active partner in both firms, and managed all the business, and mingled the assets of the one firm with those of the other:  *Prayer*, that B shall account for the profits of both firms, and that C be made a party to effect a full settlement of the first firm:  *Held*, that this bill was not demurrable for multifariousness.

[4.] One defendant cannot demur for multifariousness, on the ground of the joinder of another defendant who does not object.

In Equity, in Washington Superior Court, decided by Judge HOLT.

At the March term, 1848, of the Superior Court of Washington county, Thomas J. Warthen filed his bill in Equity, against Jephtha Brantley and Moses Daniel, charging, that about 1st Jan. 1840, complainant and defendants entered into a co-partnership, under the style of "J. Brantley & Co." for the purpose of merchandizing, in the town of Sandersville.  That the complainant

was to have nothing to do with the transaction of the business; and that a large amount of goods were sold during the year. About the end of the year, Brantley & Daniel disagreed, and Daniel withdrew—Brantley & Warthen purchasing his interest in the stock, although no settlement was made of the profits, and the business was continued by complainant and Brantley, under the firm of Brantley & Warthen; Brantley continuing to transact all the business, and amalgamating the assets of the two firms together, until some time in the year 1844, when the business was brought to a close.    The bill charged that there were large profits made, both by the firm of "J. Brantley & Co." and "Brantley & Warthen," and that a large amount was due by J. Brantley, to the complainant, from each firm.

The bill (as amended) charged that J. Brantley had recovered judgment against complainant on several notes sued on; and prays an injunction against Brantley's enforcing his judgment, but that the same may be set off against a like amount, due complainant, upon an account; and that said Brantley may fully account with the complainant, of and concerning all the transactions of Brantley & Warthen; and that a full and complete settlement may be had between complainant, said Brantley and Moses Daniel, of and concerning the firm of J. Brantley & Co.; and for general relief.

The defendant, J. Brantley, demurred to the bill :

1st.  For want of equity, and

2d.  For multifariousness.

The Court below sustained the demurrer, and dismissed the bill, which decision was excepted to, and error has been assigned.

1st.  Because the Court erred in deciding that the complainant's bill was multifarious.

2d.  Because no decree is prayed against Daniel, but he is only a necessary party to see the fund, in which he is interested, distributed.

3d.  Because, according to complainant's showing, he is entitled to the relief prayed for.

JOHNSON & THOMAS, for plaintiff in error, cited and commented on the following authorities :

*Story's Eq. Pl.* §§530, 271, 271, *a.*    *Atty. Genl. vs. Poole,* 4

Warthen *vs.* Brantley and Daniel.

*Mylne & Craig*, 17, 31.   *Turner vs. Robinson*, 1 *Sim. & Stu.* 313. *Atty. Genl. vs. Craddock*, 3 *Mylne & Craig*, 85.   *Kennedy vs. Kennedy*, 2 *Ala. Rep.* 609.   5 *Ala. Rep.* 212.   *Addison vs. Walker*, 4 *Younge & Coll.* 444.

JENKINS, represented by MILLER, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] A bill is demurrable for multifariousness, and may be dis-missed by the Court, of its own accord, even if not objected to by the defendant.   By multifariousness is meant the improper joinder of distinct causes of complaint, against the same defend-ant, or of several independent matters, against different defend-ants in the same bill.

[2.] Courts do not favor this objection, nor should they, espe-cially where the defendant is the same.   Even at Common Law, the plaintiff may unite many causes of action, wholly unconnected with each other, provided they all be of the same nature, as debt, assumpsit or trespass.   As for instance, in an action of assump-sit, the plaintiff may unite a demand due, by promissory note—another, by bill of exchange—another, for goods sold and deliv-ered—another, for work done, and another, on a promise to pay the debt of a third person, &c.

In the State of New York, under their new code, the plaintiff may now unite several causes of action in the same complaint, where they all arise out of—

1st. Contract, express or implied.

2d. Injuries, by force, to person or property.

3d. Injuries, without force, to person or property.

4th. Injuries to character.

5th. Claims to recover real property, with or without damages for the withholding thereof.

6th. Claims to recover personal property, with or without dam-ages for the withholding thereof.

7th. Claims against a trustee, by virtue of a contract, or by op-eration of law.

But even this reform, important as it is, stops short of accom-plishing all that was practicable in this department of the law. Why restrict the action to causes which fall under *one* of these

clauses? We have already abolished special pleading. And the Judiciary Act of 1799, I doubt not, designed to do away with all distinction, as to the forms of actions. The plaintiff being merely required to make, in his petition, those statements in plain language, without technical nicety or particularity, which are material to the merits of his case. It is necessary, in my humble judgment, to go one step further, and to allow him, in his petition, to embrace any and every cause of action which exists between him and his adversary. Even now, we submit to a jury in this State, in a criminal prosecution, where they are the judges of the law as well as of the facts, to find, in the same bill of indictment, whether the defendant be guilty of murder or manslaughter; and if manslaughter, whether voluntary or involuntary; and if involuntary, whether in the commission of an unlawful act, or a lawful act, without due caution or circumspection. Surely that same jury would be competent to pass upon all matters of controversy between the same parties, in a *civil* action, where they are to try the facts only, notwithstanding one of the causes may be founded on an instrument under seal, and the other, on a simple contract! Indeed, once concede that the distinction, as to forms of actions, may be dispensed with, (and who doubts it?) and the objection as to multifariousness, or a complication of causes, ceases, of course. I need only suggest what an immense saving of cost and expense to the parties, and of time and trouble to the country, if the reform could be effected. And why can it not be done?

[3.] It is urged, in the case before us, that there are two defendants. Judge Story thus states the rule—"The objection of multifariousness must still be confined to cases, where the case of each particular defendant is entirely distinct and separate in its subject-matter, from that of the other defendants; for the case against one defendant may be so entire, as to be incapable of being prosecuted in several suits; and yet, some other defendant may be a necessary party to some portion, only, of the case stated. In the latter case, the objection of multifariousness, could not be allowed to prevail. So it is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some matters in the suit, and they are connected with the others." *Story's Eq. Pl.* §271.

This is precisely the case under consideration. Jephtha Brantley was a continuing partner, from the commencement of the concern in January, 1840, to its close in 1844. The bill charges, that he was the active partner, and received and appropriated the whole of the effects of both firms, and that he carried into the new concern, and mixed up with it, the assets of the old. It would seem, therefore, to be difficult if not impossible, to settle the whole of this business by separate suits. It is true, that Moses Daniel, the co-defendant, has an interest only in the first firm, from which he retired at the end of the year 1840. But no decree is sought against him. He is united with Brantley in order to stand by and see that the business, while he was a member, is correctly arranged, and that he may receive one third of the nett profits which it may be ascertained to have made.

[4.] He does not, however, complain. And even if the bill were multifarious, as to him, as it clearly is not, this is no necessary ground of objection by Brantley, the other defendant. *Attorney General vs. Craddock*, 8 *Sim. R.* 466.

In the late case of *The Attorney General vs. The Corporation of Poole*, 4 *Mylne & Craig*, 17, in speaking of the right of one defendant to demur for multifariousness on the ground of the joinder of another, Lord Cottenham, Lord Chancellor, says: "If it were competent for him to do so in such a case, there might in many instances be a denial of justice; the case against one defendant might be so entire as to be incapable of being prosecuted in several suits; and yet, some other defendant might be a necessary party to some portion only, of the case stated." p. 31. Such we conceive to be the case before us, that the draughtsman of this bill could not have possibly prosecuted the suit against Brantley, nor could a jury have ascertained his liability on the *last* firm, without first considering and investigating the affairs of the *first* firm, of which Daniel was a partner.

The same eminent authority above quoted, in *Campbell vs. Mackay*, 1 *Myl. & Cr.* 603, says: "To lay down any rule applicable universally, or to say what constitutes multifariousness as an abstract proposition, is, upon the authorities, utterly impossible. The cases upon the subject are extremely various, and the Courts, in deciding them, seem to have considered what was convenient in particular circumstances, rather than to have attempted to lay down any general rule."

In a later case, the same Chancellor says : " The object of the rule against multifariousness, is to protect a defendant from unnecessary expense, but it would be a great perversion of the rule, if it were to impose upon the plaintiffs and all the other defendants, the expenses of two suits instead of one." *The Att'y General vs. Craddock*, 3 *Myl. & Cr.* 85.

The case of *Lewis vs. Edmund*, 6 *Sim.* 251, is much in point. Without stating the facts, suffice it to say, the object of the bill was to settle two different estates, the assets of the one having been mingled with the other.  The Vice Chancellor says: "The bill represents such circumstances as to show that the Court cannot administer relief without taking the account of both estates."

Authorities might be multiplied from the English books, but these are sufficient to show that the rule, as administered in Westminster Hall, would have held this bill not multifarious, and if multifarious, that Brantley could not take advantage of it, the co-defendant, Daniel, not objecting.

The rule in the American Courts is the same.  5 *Paige*, 160. *Ib.* 254.  9 *Paige*, 194, 434.  20 *Pick.* 368.

In *Wells vs. Strange and others*, decided by this Court at Americus, *(5 Ga. Rep.)* we laid down the same rule, which we now enforce, by reversing the judgment of the Court below.