## HAUPT *v.* PHŒNIX MUTUAL LIFE INSURANCE CO.

A policy of life-insurance expressly stipulating that it "shall cease and determine" if any "premium be not paid when due" is not, in case of failure to pay a particular premium at the proper time, kept in force merely because the insurance company had, in the city of the residence of the insured, a habit or custom of receiving overdue premiums from other policy-holders.

Argued February 16, — Decided March 1, 1900.

Action on insurance policy.    Before Judge Norwood.    City court of Savannah.    July term, 1899.

*O'Connor, O'Byrne & Hartridge,* for plaintiff.
*Barrow & Osborne,* for defendant.

LUMPKIN, P. J.    The defendant in error issued to William Lee Haupt a policy of life-insurance, dated March 4, 1898, in which Mrs. Mary L. Haupt was named as the beneficiary.    The policy contained the following stipulations: "All premiums are payable at the home office in Hartford, Conn., but will be accepted if paid to an agent in exchange for a receipt signed by the President or Secretary and countersigned by the Agent designated thereon.    This policy shall not take effect until the first premium is so paid while the insured is in good health; and if any subsequent premium be not paid when due, this policy shall cease and determine and all premiums previously paid shall be forfeited to this Company, except as hereinafter provided."    The second premium, the amount of which was $53.86, became due on the 4th day of March, 1899.    It was not then paid.    William Lee Haupt died March 13th of that year. On that day, the second premium was tendered to the company,

but it refused to accept the same, on the ground that the policy was no longer of force. Mrs. Haupt thereupon brought an action against the company, setting forth in her petition the facts above recited. She further alleged: "Upon the 4th day of March, 1899, when said policy was in force, a premium of $53.86 became due and payable under the terms of the policy, but, by the custom and practice of said company, its agents at Savannah were permitted and authorized to extend the date and payment of said premium until such time as their discretion might suggest, the policy being understood and recognized by said company as in full force during the time such extension of payment continued." "This practice and custom of the company in extending the time of payment of premiums kept said policy in force until such time as the agents should return to said company the receipt of said company sent said agents to deliver to the insured upon payment of said premium;" and at the time of the death of William Lee Haupt, the receipt for the premium due March 4th, 1899, "was still in the possession and custody of said agents and managers, and said policy, under the practice and custom heretofore set out, was in full force and effect, the time of payment of said premium having been extended by said agents and managers in that behalf authorized and empowered." On March 13, 1899, upon which date the insured died, "said policy, by said practice and custom, was in force and effect, the time of the payment of said premium having been extended by said company, through its agents duly authorized and empowered in that respect, as heretofore stated." By an amendment to the petition the plaintiff further alleged, "That the practice, usage, and custom of the defendant company in dealing with its policy-holders was to extend the times of payment and waive forfeitures of policies as set out in [the petition as originally framed]; and this general practice, usage, and custom was, by the act of the company through its agents aforesaid, applied to the policy sued upon, and the time of payment of the premium due March 4th, 1899, was extended; and this general practice, usage and custom as applied to the policy sued on was well known to said William Lee Haupt, the insured, who at the time of his death knew said policy to be of force and in full effect."

The defendant demurred to the petition as amended. The grounds of the demurrer were, (1) that the petition showed upon its face "that the policy of insurance which is the contract sued on lapsed, ceased, and was determined by reason of the failure of the assured to pay the premium due on March 4th, 1899;" (2) that the petition showed the "policy sued on was not in force at the date of the death of the assured;" and (3) that the plaintiff's allegations to the effect that the usage relied on applied to the policy in question were too indefinite, in that they failed to show whether the extension of the time of payment therein referred to "was granted verbally or by writing or by reason of the alleged practice of the defendant mentioned" in her petition. The demurrer was sustained, and the plaintiff excepted. We think the judgment rendered by the court was right. It is of prime importance to notice at the outset that the petition does not allege any express agreement or promise by an agent of the company to extend the time for payment of the premium due March 4, 1899. There is nothing in the petition which can be tortured into an allegation that Haupt had any assurance that the payment of this premium would not be required of him on the day it fell due as stipulated in the policy. Nor is there among all the studied and carefully-framed allegations of the plaintiff the sign of an averment that there had ever been between Haupt and the company any course of dealings which would warrant him in assuming that a single day's indulgence would be granted him as to the payment of this or any other premium. The plaintiff's whole case is evidently planted upon the idea that because of some sort of a usage, custom, or practice on the part of the company's agents in Savannah, in extending to other policy-holders time for the payment of their premiums, Haupt's policy, whether he paid according to contract or not, was kept in force so long as the premium receipt remained in the hands of the company's agents at Savannah. The averment in the amendment that "this general practice, usage, and custom was by the act of the company . . applied to the policy sued upon" can not, when taken in connection with the allegations of the petition as originally filed, fairly be regarded as going any further than as just indicated. Besides,

the demurrer specially presented the objection that the allega-tion last quoted was entirely too indefinite, in that it failed to state how this alleged usage was made applicable to the policy in question. It will therefore be perceived that the plaintiff's case had no standing in court upon the theory that, subsequently to the issuing of the policy, there was any express waiver on the part of the company relieving Haupt from paying the second premium promptly when due, or any course of dealings between him and the company which would estop it from relying on the stipulation contained in his policy to the effect that it should im-mediately "cease and determine" in the event he failed to pay that premium on the day it became due and payable. Accord-ingly, the decisions of this court in *Cotton States Life Ins. Co.* v. *Lester,* 62 *Ga.* 247, *Alabama Gold Life Ins. Co.* v. *Garmany,* 74 *Ga.* 51, and *Grant* v. *Insurance Co., 76 Ga.* 575, relied on by counsel for the plaintiff in error, have no application to the case now before us.

The only remaining inquiry is, whether or not the alleged practice of the company in dealing with other policy-holders in Savannah was of itself sufficient to keep Haupt's policy in life after his failure to pay the second premium when due. It can not be seriously contended that this usage or custom became, by implication, a part of the contract evidenced by the policy. Paragraph 4 of section 1 of the Political Code declares that: " The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." Granting that such a custom as that mentioned in the plaintiff's petition existed in Savannah, the policy issued to Haupt expressly nega-tives all idea that the parties thereto contracted with reference to such custom. In so far as any local usage is inconsistent with the express terms of a contract, it certainly can not be said that, by implication, such usage became part and parcel of that con-tract. See *Mutual Benefit Life Ins. Co.* v. *Ruse,* 8 *Ga.* 534, 540, citing 3 Kent's Com. 260; *Merchants Bank* v. *Demere,* 92 *Ga.* 735, 740. "Parties by their contracts may disregard any usage or custom ordinarily prevailing in their transactions, and if they make the terms of their contracts contrary to the usage,

they must have intended their contracts to exclude the usage." 27 Am. & Eng. Enc. L. 840. Applying this cardinal rule of construction, "a custom of receiving overdue premiums" is not an excuse for failing to pay a premium in accordance with the express stipulations contained in a policy of insurance. 11 Ibid. 311, 312. In this connection see, also, Lewis v. Insurance Co., 44 Conn. 72, 91-2. No insurance company could, with safety, grant indulgence to any of its policy-holders in a given locality, if by so doing it became, as matter of law, bound to grant like indulgence to all of its patrons in that locality, whether it was willing to do so or not. The establishment of such a doctrine would render it out of the question for such a company to grant accommodations in many instances where such a course would be mutually advantageous to itself and its policy-holders. We understand the law to be that all persons, natural or artificial, are at liberty to waive at pleasure the benefits of contract stipulations in a particular instance, without losing the right to insist upon such stipulations in other instances, so long as no one is misled and induced to act to his injury. Surely it can not be said that simply because an insurance company grants to one policy-holder indulgence or accommodation to which he is not entitled under the strict terms of his contract, another policy-holder has the right to act upon the assumption that similar indulgence or favor will be shown him, notwithstanding he can not claim under his contract any shadow of right to the same. The doctrine of equitable estoppel has never been carried to such a length as to afford relief to one who presents an excuse for failure to meet contract obligations so completely without merit as that offered in the present case.

*Judgment affirmed. All the Justices concurring.*