## LOWERY LOCK COMPANY *et al. v.* WRIGHT.

1. There was no error in the rulings of the court upon demurrer.
(*a*) A petition which, though defective, sets forth a cause of action is not subject to be dismissed on general demurrer.
(*b*) Since the passage of the uniform procedure act of 1887 (Civil Code of 1910, § 5406), a demurrer based alone upon the statement that the plaintiff has an adequate remedy at law can not be sustained. Though a plaintiff may seek to recover damages, and to that extent may have prima facie an adequate remedy at law, when it appears from the allegations of the petition that the plaintiff has an equitable interest to protect and that the intervention of equity is necessary to safeguard his legal rights during the pendency of the litigation, or that the legal remedy will be nugatory without the co-operation of equity, the aid of a court of equity may be invoked.
(*c*) The court did not err in overruling the demurrer to the petition, based upon the ground of misjoinder. The plea of misjoinder can not be raised by a party in any cause for or in behalf of another party. The defendant against whom there is a sufficient complaint can not object that others who have no interest in the subject-matter of the suit are made defendants, unless it also appears that his interests are affected thereby. "One defendant can not demur for multifariousness, on the ground of the joinder of another defendant who does not object."
(*d*) A demurrer which is defective is impotent. The law follows the Scripture in that a demurrer is not permitted, while disregarding the beam in its own eye, to point out the mote in the eye of another. Demurrer being a critic must itself be free from imperfection.
(*e*) The court did not err in overruling the demurrer to the effect that the contract was unilateral. In a strict sense a contract is unilateral and unenforceable when one party to it is bound and the other is not, or when one party gets something and the other nothing. But mutual promises may supply sufficient consideration to render the contract operative and enforceable; and a contract from which it appears that rights which are granted to be exercised in the future are based largely upon past payments, or advances of money, can not be said to be unilateral.
2. The contract in the present case conveyed to the plaintiff only sole and exclusive selling rights, in the United States and foreign countries, to a patented lock described therein.
3. The trial court properly construed the provisions of the contract, in holding that the duty was imposed upon the defendant to manufacture the device or lock, which the plaintiff obligated himself to sell. While there is no express statement to this effect, the implication is irresistible when all of the stipulations of the contract are considered together, as they must be in determining the intention of the parties in making the contract, and the purposes for which the contract was made.
4. In cases of ambiguity the meaning of the words employed in a contract may be explained by parol evidence; not for the purpose of varying the contract or of adding thereto new stipulations or conditions, but to

serve the sole purpose of rendering plain the doubtful meaning of the language employed, and in order to make clear the intention of the parties. In view of this ruling, it is directed that the amendment which purports to explain ambiguity in the contract by parol testimony be stricken before a trial.

No. 3064. /FEBRUARY 5, 1923.

Equitable petition. Before Judge Pendleton. Fulton superior court. December 14, 1921.

*Reuben R. & Lowry Arnold* and *Mallet & Bell,* for plaintiffs in error.

*Napier, Wright & Wood* and *Julian S. Chambers,* contra.

RUSSELL, C. J. This case is before the court on exceptions to the overruling of a number of demurrers filed by the defendant, the Lowery Lock Company, to the plaintiff's petition and the several amendments thereto. Wright, the plaintiff in the court below, brought a suit against the Lowery Lock Company, one Gray, and one Buttrell, to recover expenses he alleged he had been put to in carrying out an alleged contract, as well as a large sum for alleged profits which would have accrued but for a breach of the contract. Liability for the items of money expended, as well as for the probable profits, was asserted against the Lowery Lock Company alone; but Gray and Buttrell were also named as defendants, in view of the fact that equitable relief was prayed against them, though no judgment was sought against them as individuals. So far as appears from the record neither Gray nor Buttrell appeared either by plea, answer, or demurrer in the court below. The Lowery Lock Company demurred upon the ground that the petition set forth no cause for equitable relief, nor any cause of action; upon the ground of misjoinder; upon the ground that the contract, the basis of the plaintiff's suit, was void and unenforceable, because unilateral. Upon these demurrers the trial judge at one time passed an order sustaining the general demurrer, giving the plaintiff, however, the privilege of amending within a time specified in the order.

In our view of the case it would be profitless to recite the various allegations of the two amendments that were allowed by the court in amplification of the original petition, though we will later refer to the last amendment in which the court allowed the plaintiff to set up, if he could, a parol agreement as to who was to manufacture the grip-locks, as explanatory of the original contract upon which

the plaintiff relied. This amendment was as follows: "Further amending as to the agreement to manufacture locks, by the Lowery Lock Company, as set forth in paragraph three of the amendment allowed November 18th, 1921, plaintiff alleges that the same was an oral or verbal agreement." The demurrer is as follows: "The plaintiff having this day made further amendment, alleging an oral agreement to manufacture locks, the defendants. add to their demurrer heretofore filed the following grounds: 1. All oral agreements were merged into the written contract; and the same is not admissible, because it adds to and varies the written contract. 2. Said alleged oral agreement is further violative of the statute of frauds, in that (1) it is a contract for the manufacture, sale, and delivery of merchandise and personal property for an amount in excess of fifty dollars; (2) it is a contract which is not to be performed within one year from the making thereof." It was demurred to on the ground that it sought to contradict, alter, and vary the terms of a written contract and to substitute a parol agreement for the written contract. The trial judge could, without violating the well-recognized rule to which the demurrer refers, have overruled the demurrer if he was of the opinion that the contract was ambiguous on the point. However, in view of our holding, as will hereafter appear, that, fairly construing the contract as a whole, the duty of manufacturing the transmission grip-lock was upon the defendant, the Lowery Lock Company, the allowance of the amendment and the overruling of the defendants' demurrer thereto is too immaterial to afford ground for reversal. of the judgment of the trial judge, no other error appearing. We therefore direct that the demurrer be sustained and the amendment just quoted be stricken in advance of the trial.

The first question which naturally arises is as to whether the court erred in overruling the demurrers to the petition as a whole, including all the amendments allowed. If the petition set forth a cause of action at all, it is not subject to be dismissed on *general* demurrer. Consequently, it can not be said that the trial judge erred in overruling the demurrer which alleged that the petition did not set forth a cause of action, even though many of the statements of the petition be dim and vague and might be subject to special demurrer. Another ground of the demurrer challenges the petition for want of equity, and denies that the facts set forth in

the petition afford any ground for the intervention of equity, or for equitable relief. We do not think the trial judge erred in overruling this ground of the demurrer. Although the plaintiff only sought to recover damages, and to that extent had an adequate remedy at law, it was not improper, in view of the allegations as to his interest in the property, for the plaintiff to ask that his legal rights be safeguarded during the pendency of the litigation. Instances might be multiplied of cases where a legal remedy would be rendered absolutely nugatory but for the assistance of a court of equity and the timely intervention of equitable relief. Equity is the handmaiden of the law. Its functions are in a sense ancillary, and this must be peculiarly recognized in a State like ours, where, since the passage of the act of 1887 (Civil Code, §§ 5406, 5508), distinctions in procedure in law and equity have been obliterated and " swept away." To use the language of Mr. Justice Simmons in *DeLacy* v. *Hurst,* 83 *Ga.* 223, 230 (9 S. E. 1052), " For myself, I can say that I am glad that the legislature had the wisdom to sweep away, by one act, all these forms and technicalities, and to provide for the trial and determination of all the plaintiff's or defendant's rights in one action." On pages 228-229 of the *DeLacy* case Judge Simmons says: " Under the old rules of equity pleading and practice in this State, . . courts of equity would not entertain a bill so long as the complainant had a common-law remedy. Whenever he applied to a court of equity in such a case as this, it was incumbent on him to show that he had exhausted all his common-law remedies. . . When this was alleged in the bill, equity took jurisdiction and would aid him. . . We think these rules have been abolished in Georgia since the passage of the uniform-procedure act of 1887 (Acts 1887, p. 64). That act conferred upon the superior courts jurisdiction to hear and determine all causes of action, whether legal or equitable, or both. If the plaintiff has a purely legal action, he can bring it in that court; if he has a purely equitable action, he must bring it in that court; if he has an action both legal and equitable, he must bring it in that court. If it is a purely legal action, then it is tried upon legal principles; if a purely equitable action, equitable principles are applied on the trial of it; if it is partly legal and partly equitable, both legal and equitable principles are applied. This being true, we cannot see the reason for compelling a plaintiff, in a case like

the one under consideration, to apply first to the superior court and obtain a judgment and have an execution issued and returned nulla bona, and then apply to the same court to aid him in enforcing the judgment which the court had previously granted."

The *DeLacy* case involved cancellation of fraudulent conveyances, but the ruling applies equally to any other form of equitable relief; for Justice Simmons quotes approvingly from the opinion of Chief Justice Smith of North Carolina, in deciding a case very similar to the one now before us, as follows: " When, under our former system, the law was administered by two separate and distinct tribunals, of which each had its own rules of practice, the court of equity would lend its aid to a creditor in enforcing a legal demand when he had none or an inadequate remedy at law. Hence it became an established doctrine in that court to refuse its assistance unless the creditor had ascertained the amount of his debt by reducing it to judgment, and sued out execution, when the property of the debtor pursued could be seized and sold thereunder, as in case of a fraudulent and ineffective assignment, in order that a lien might attach, although this was not required when the estate and interest to be apportioned was purely equitable or such as was not accessible to legal process, and in both cases it must be shown (and commonly this was done by the return of nulla bona to the execution) that the debtor had no property from which the debt could be satisfied by such legal process. . . It is obvious that as this rule grew out of the relation of the two courts under the former system, one acting in aid of the other, and was essential to the harmony of their action in the exercise of their separate functions in the administration of the law, so it must of necessity cease to have any force when the powers of both, and the functions of each, are committed to a single tribunal substituted in place of both. Why should a plaintiff be compelled to sue for and recover his debt, and then to bring a new action to enforce payment out of his debtor's property in the very court that ordered the judgment? Why should not full relief be had in one action when the same court is to be called on to afford it in the second? The policy of the new practice, and one of its best features, is to furnish a complete and final remedy for an aggrieved party in a single court, and without needless delay or expense."

Another ground of the defendant's demurrer to the petition presented the objection that there was a misjoinder of causes of action; and this ground, we think, the lower court properly over-ruled. The plea of multifariousness is not favored, and is not generally sustained except in a very plain case where a party would be hampered unless the distinct rights of each party were passed upon separately. The tendency of the law is to broaden the doctrine which permits the court to bring all the parties interested in any particular controversy before it, and, without consuming time uselessly, to administer justice according to equity, which means also according to law, because equity follows the law. In overruling the demurrer based upon the ground of misjoinder we think that the judgment of the court below is sustainable upon several grounds. In the first place, Gray and Buttrell are not substantial defendants in the case at bar, and the plaintiff did not ask a judgment against either of them. They were named as defendants solely for the purpose of asking the court to restrain them as the servants and agents of the defendant corporation, the Lowery Lock Company, from altering the status of that defendant's assets, of which they were alleged to be in charge. But even if there were no allegation that they were the personal agents of the corporation (and a corporation can only be operated through human agencies), still it does not appear that they or either of them were objecting or have objected to being joined with the Lowery Lock Company in this action; and it is well settled that the plea of misjoinder can not be raised by a party in any cause for or in behalf of another party. One can only raise the point, whether by plea or demurrer, that he is improperly joined with another, when he shows that he himself is injuriously affected, and that his own cause is prejudiced by the alleged misjoinder. " Though there may be misjoinder of parties defendant in equity, a defendant against whom there is a sufficient complaint can not object that others who have no interest in the subject-matter of the suit are made defendants, unless it also appears that his interests are affected thereby. It is only when the complaint states some ground of relief against each defendant, and the claims against them are improperly joined in one suit, that each has a right to demur on the ground that the other is improperly joined with him. Under the equity system a demurrer for misjoinder of

parties may be interposed only by the party who has been improperly made a defendant." 20 R. C. L. 709, § 49. Under this rule, which is thoroughly discussed and adopted in one of the earliest cases in this court, that of *Warthen* v. *Brantley,* 5 *Ga.* 571, there being a cause of action set forth against the Lowery Lock Company, it is none of their concern whether there is a case properly set forth against Gray and Buttrell or not; and whatever may be the objection, it must be raised by these parties for themselves.

Upon another ground the court's judgment in overruling the demurrer on the ground of misjoinder is sustainable. The objection of misjoinder may be raised either by plea or demurrer. The defendant elected to demur; and the judge may properly have considered the demurrer as insufficient, because it does not attempt to set out in what respect or for what reason there is a misjoinder. The demurrer contents itself with a mere arbitrary and opinionative statement that there is a misjoinder. In the use of demurrer lurks one danger,— that the demurrer may itself be demurrable for want of sufficient specification. Demurrer, being itself a critic, must itself be free from imperfection. The Scripture is followed in that a demurrer is not permitted to disregard the beam in its own eye while attempting to point out the mote in the eye of another.

The lower court did not err in overruling the ground of demurrer in which it is contended that the contract is unilateral. Using plain language, a contract can only be said to be unilateral and unenforceable when by the terms of the contract one party is bound and the other is not, or one party gets something, and the other does not. In the contract under consideration the plaintiff agreed to act as sole selling agent of the " motorgrip transmission lock " of the defendant company. He promised and undertook to sell the entire output, whatever it might be; and had the plaintiff failed or refused to sell, and the defendant had been endamaged thereby, he would have been clearly liable for a breach of his contract.

So many grounds of the demurrer are addressed to alleged fatal defects in the contract upon which the plaintiff based his action, that we shall first consider the contract as it appears, without particular reference to any objection, and from this consideration determine the merit of each of the several objections presented

by demurrers. Annexed to the petition are copies of two tentative agreements which we shall not discuss, because we agree with counsel for plaintiff in error that they are to some extent irrelevant to the issue, and at best can be considered only as matter of inducement, and as a part of the history of the case; leading up to the writing of June 20, 1920, which must be the basis of the plaintiff's claim. The contract is as follows:

" This agreement made and entered into this June 1st, 1920, between Lowery Lock Co., a corporation, chartered under the laws of the State of Georgia, party of the first part, and James L. Wright, doing business as the Wright Accessories Corporation, party of the second part, both of said State and county. Witnesseth: 1. That in consideration of one dollar ($1.00) in hand paid, for valuable services rendered and to be rendered and money spent and to be spent, the said Lowery Lock Co. hereby agrees and does grant to the said Jas. L. Wright, doing business as the Wright Accessories Corporation, the sole and exclusive selling rights on their device to be known as the Motorgrip Transmission Lock for Ford cars, in the United States and foreign countries, said lock being the one manufactured or assembled at this time, and to include the same lock known as the Motorgrip Transmission for Ford automobiles, with any improvement that may be added. 2. It is agreed also that the said party of the first part is at all times to receive a net profit of one dollar ($1.00) on each and every lock sold. It is further agreed by the party of the first part that they are to collect all moneys for said locks sold by the party of the second part, and that on the tenth of each month the party of the first part will remit to the party of the second part all moneys collected over one dollar ($1.00) net profit to them. 3. Said party of the second part agrees to handle the sales of said lock in a businesslike manner, to stand and pay for all sale expenses, which will include advertising in all form, circular matter, photographs, salesman's expenses and the like, and in fact all expenses pertaining to sales. The party of the first part agrees to furnish a reasonable number of samples of said lock expressly for the trade. 4. It is understood that this agreement is not transferable in the event the said Jas. L. Wright severs his connection with the active managership of sales, unless approved by the Lowery Lock Co. 5. It is further understood and agreed that this agreement is to

remain in full force and effect for a period of five years from date, with the privilege of renewing for an additional five years if sale of said lock warrant their manufacture, that fact to be determined by both parties concerned. 6. It is agreed by both parties that the party of the first part, in extending credit on open accounts, will limit shipments to 10% of their commercial rating; invoices amounting to over the 10% shall be shipped at the discretion of the party of the first part." This contract was signed by both parties.

It is plain from a reading of this instrument that the first paragraph merely appoints the plaintiff as a selling agent of the Lowery Lock Company, and that the sole and exclusive right to sell the "Motorgrip Transmission Lock" is transferred to him. By the transfer there is imposed on the plaintiff the duty of selling all of the motorgrip transmission locks that may be made, and in accepting the contract he undertakes to perform this duty.

Though the second paragraph does not expressly state who is to manufacture the device which plaintiff has undertaken to sell, it appears from this paragraph, as well as from the sixth paragraph, by absolutely necessary implication, that the party of the first part, the Lowery Lock Company, is to manufacture the articles to be sold by plaintiff as party of the second part, and that the plaintiff is to be nothing more than a mere selling agent. The first stipulation of the second paragraph is that the Lowery Lock Company is at all times to receive *a net profit* of one dollar on each and every lock sold. Unless the Lowery Lock Company manufactured the lock and knew the cost, how could it be determined that the one dollar they were to receive on each and every lock was net profit? If Wright was to manufacture the machines, or if any one else was in contemplation as a probable maker of these locks, the statement would have been that the Lowery Lock Company was to receive one dollar on each machine sold; for it would have been none of their concern whether that was net profit, or whether a loss was involved. The very statement that the one dollar was to be *net profit,* and that they themselves were to collect the money and deduct both the cost and the net profit before they remitted anything to their sales agent, is an implied agreement on their part to manufacture as many locks as Wright could sell. The expression " one dollar net profit " is twice used in paragraph 2

of the alleged contract; and the plaintiff, who was to sell the locks, was to receive no money except on the tenth of each month, when it was agreed that the party of the first part, after having counted the cost and added to that sum one dollar net profit for the corporation, would remit the remainder, if any, to him. It is very plain from this that the cost was a matter in which the plaintiff in this case had no control, and that he was obliged to pay whatever the party of the first part might say was the cost, and in addition thereto one dollar net profit, before he would have made anything for his services. Furthermore, the agreement in the sixth paragraph, which affected the extension of credits, gave the Lowery Lock Company the right to limit financial credits to the plaintiff's customers to ten per cent. of their commercial rating. Unless it had been clearly within the contemplation of the parties that the Lowery Lock Company was to manufacture the articles to be sold, they would have had no interest in the transaction except security for one dollar net profit, and would not have been interested in securing payment on the cost price of the article. As a corroborative circumstance appearing in the pleadings is the agreement that Gray was to furnish $35,000 to the Lowery Lock Company, which can only be presumed to have been needed in case they intended to manufacture; for it would not have been needed if some one else was to manufacture the patented article.

The provisions of the third paragraph of the contract set forth above are sufficient of themselves to prevent the contract from being unilateral. Mutual promises may avail for that purpose; and in this paragraph the plaintiff agreed to handle the sales of the lock in a businesslike manner, and to pay all expenses pertaining to sales, stating some of these expenses very minutely.

It is insisted by plaintiff in error, that the contract is absolutely null and void and unenforceable, because it is unilateral, because it is too vague and indefinite to be capable of enforcement, that it carries no obligation upon the part of the defendant to manufacture the locks, and that there is nothing to prevent the plaintiff himself from manufacturing the locks. Each of these positions, we think, has been sufficiently noticed in what we have already said in this opinion. There is a further demurrer that the contract above set out is too vague and indefinite to admit of any enforcement, for the reason that no quantity of any article or thing is sold, or contracted

to be sold, and there is no measure for ascertaining any quantity of the article or thing which is the subject-matter of the contract. As we have already ruled, the contract bound the Lowery Lock Company to make at least as many griplocks as Wright could sell and did sell.

The fourth headnote (when considered with the demurrer to the amendment permitting oral testimony) sufficiently states the ruling therein, and needs no elaboration.

*Judgment affirmed. All the Justices concur, except Gilbert, J., disqualified.*