### 15871. PENN MUTUAL LIFE INSURANCE CO. *v.* BLOUNT *et al.*

1. "A general agent may bind his principal with respect to all matters within the apparent scope of his employment. But the principal may qualify the authority of a general agent, and will not be bound by the acts of his agent beyond the scope of his authority, where the person dealing with the agent had notice of such limitations." *Hutson* v. *Prudential Insurance Co.,* 122 *Ga.* 847 (1) (50 S. E. 1000).

 (a) Where an application for a policy of life insurance stipulated that the application should be regarded as a part of the. contract if and when issued, and that if the premium on the insurance should not be paid at the making of the application the contract of insurance should not be in force unless or until a policy should be issued and delivered to the assured and the first premium thereon actually paid during his

lifetime and good health, and that the assured understood that the company's agents had no authority to modify, alter or enlarge contracts; and where the policy as issued upon the application contained provisions that no alteration or waiver of any of its conditions should be valid unless endorsed thereon and signed by an officer of the company, and that no agent was authorized to modify, alter or enlarge the contract, the actual payment of the first premium during the lifetime and good health of the assured was a condition precedent to the liability of the insurer, and neither a local agent nor a general agent of the company could waive such condition. If the condition was not complied with, an unauthorized delivery of the policy by one of such agents would not estop the company from urging the non-compliance therewith as a defense, notwithstanding the policy so improperly delivered may have contained a formal acknowledgment of the receipt of the premium.

(b) But the company by its proper officers could waive such condition, if it did so, it would not be permitted to deny the payment of the premium for the purpose of avoiding the policy, although it might do so for the purpose of enforcing the payment of the premium.

(c) In a matter of this sort, whatever the company might do itself it would be permitted to do by an agent, and it would be bound even by an unauthorized act of its agent if it subsequently ratified it.

(d) While it appeared from the petition that the defendant's agents made an absolute and unconditional delivery of the policy when they were not authorized to do so, the facts set forth therein further showed that the company subsequently ratified the delivery and, thus, should be held to a waiver of the condition above referred to.

(e) It follows from the above that the petition set forth a cause of action.

2. Since the petition as amended is construed as sufficiently alleging a ratification of certain acts of the defendant's agents, which in the absence of ratification would have been unauthorized, there was no merit in the special demurrers attacking such allegations, upon the ground that they were mere conclusions of the pleader and that the authority of the agents to do such acts was not shown.

(a) There was no merit in the special demurrer attacking the alleged tender of the unpaid first premium, upon the ground that the company was under no obligation to accept it, it appearing from the petition that, although the first premium had not actually been paid, the policy was effective at the death of the assured and that the premium should be paid.

(b) The petition having set forth a cause of action for the recovery of the principal of the policy, the court did not err in overruling the demurrer to the allegations and prayers for the recovery of damages and attorney's fees, where the sole reason urged by the demurrer for striking the same was that the petition showed no right of recovery whatever under the policy.

3. The court erred in not sustaining special demurrers to averments of the petition wherein it was shown that the beneficiaries under the policy made a futile application to the insurance commissioner of the State for some action on his part by which the insurer would be re-

quired to deliver to them the policy, the possession of which the insurer had acquired with the consent of the assured during his lifetime, and which the insurer thereafter refused to deliver to the beneficiaries. Even if the insurance commissioner had any authority in such a matter, the ex parte action of the plaintiffs therein could not be taken advantage of in their subsequent suit upon the policy. The allegations as to the communications between them and the insurance commissioner were therefore irrelevant.

(a) The rule that a custom of a business or trade may be binding upon the parties to a contract when it is of such universal practice as to justify the conclusion that it became by implication a part of the contract (Civil Code of 1910, § 1 (4)) can not make the custom a part of the contract where, as in the instant case, the alleged custom is inconsistent with the expressed provisions of the agreement. The court erred in not sustaining the special demurrer to one of the paragraphs of the amendment to the petition, by which it was sought to bind the defendant by an alleged custom.

DECIDED APRIL 11, 1925.

Complaint; from city court of Waynesboro—Judge W. H. Davis. August 12, 1924.

Application for certiorari was denied by the Supreme Court.

This was an action upon an insurance policy on the life of Ransom A. Bell in the sum of $5000. The defendant filed general and special demurrers. The petition was amended, after which the defendant renewed its original demurrers and filed other demurrers to the suit as amended. All the demurrers were overruled, and the defendant excepted.

The application for the policy contained the following stipulations: "My statements and answers to the questions printed above, and my statements and answers made and given to the company's medical examiner, are full, complete and true. Upon them I base my application for insurance, and agree that they shall be regarded as a part of the contract if and when issued. If the premium on the insurance herein applied for is not paid at the time of making this application, the contract of insurance shall not be in force unless or until a policy shall be issued and delivered to me and the first premium thereon actually paid during my lifetime and good health. If settlement is effected in accordance with the attached receipt at the time of making this application, the policy shall be in force as of the date of such settlement, provided the application is approved by the company at the home office. The policy, if and when issued to me, shall be in the form now in use by the company. I understand that neither agents nor examiners have any authority to modify or enlarge contracts. The

foregoing agreements and declarations are made on behalf of myself and of any beneficiary under any policy on my life issued by the company upon this application. My acceptance of any policy issued on this application will constitute a ratification by me of any correction or addition to this application made by the company and noted in the space provided for 'home office endorsements only.' "

In the policy itself was a provision as follows: "No alteration of this policy or waiver of any of its conditions shall be valid unless endorsed thereon and signed by an officer of the company. No agent is authorized to modify, alter or enlarge this contract or to bind the company by any promise or undertaking as to distribution or surplus or any future award of interest."

The petition alleged: On September 20, 1922, the assured made application for the policy, and on the following day was duly examined by the company's physician, and the papers were forwarded to the proper officers of the defendant through P. W. Thompson, the local agent of the insurance company at Waynesboro, Georgia. On October 1, Thompson made to the assured "absolute and unconditional delivery of the policy" under an agreement that the premium was to be paid on or about October 14. The credit was expressly agreed to and was in accordance with the usual practice of the company in such matters, the agent, who was financially responsible, stating to the assured that he himself was liable to the company for the premium. The assured, however, was able to pay the premium and would have done so but for the assurance of the agent that the policy was all right and of force when delivered. On October 7, after the policy had been in actual possession of the assured, and in full force, for seven days, the assured desired to change the beneficiary. Upon this fact being made known to Thompson the agent, he had the assured to make out a written application accordingly. The application was to substitute the present plaintiffs in lieu of the beneficiary originally named in the policy. Thompson forwarded the application to the general agent of the company at Augusta, Georgia, Mr. I. T. Heard, who forwarded it to the head office of the company at Philadelphia, where on October 13, 1922, the company did change the beneficiary as requested and mailed the policy back to its general agent at Augusta for return to the assured. The policy had been entrusted to the local agent at Waynesboro, on October

7, for the sole purpose of having a change made in the beneficiary, and the assured would have paid the premium on or about October 14, as originally agreed, but for the voluntary suggestion of Thompson that he need not pay the premium until the policy had been returned from the home office, with the change in the beneficiary. "On October 18, 1922, at the request of said Bell, E. H. and H. M. Blount personally called upon the said P. W. Thompson, agent of said defendant company as aforesaid, and offered to pay the premium on said policy. The agent said that he was responsible to the company for the premium, but he preferred not to accept the money until he could confer with higher officers of the company, inasmuch as the said Bell had, on the morning of that same day, sustained an injury by a burn while trying to extinguish a fire at his home, which injury, however, the physician at that time, had stated was not serious, though painful. Said Ransom A. Bell died on October 22, 1922, and at that time, the policy was in the possession of the said I. T. Heard, general agent of the defendant company at Augusta, and had been there since October 18, 1922."

Certain other allegations were made in the petition apparently for the threefold purpose of explaining the failure to attach a copy of the policy, of showing an absolute refusal to pay, and of illustrating the defendant's alleged bad faith, by reason of which the plaintiffs prayed to recover damages and attorney's fees, in addition to principal and interest.

The amendment to the petition was as follows:

"18.    Since filing said petition, plaintiffs served notice on the defendant company to produce the original policy of insurance described in the petition, the return of which to plaintiff had been refused by the defendant company; and in response to that notice, attorney for plaintiffs has been informed by attorneys for defendant company that the original policy naming the first beneficiary as stated in the petition was destroyed by the company, and a new policy bearing the same date and number as the original, but containing the new beneficiaries, was substituted for the original, and that substituted policy has been placed in the hands of the plaintiffs' attorney, together with a photographic copy of that policy and of the application of Ransom Bell, the insured, for the original policy; and plaintiffs now voluntarily attach hereto that photographic copy of the substituted policy and application, as

containing the correct recital of the substantial statements of the original policy, except as to the original beneficiary.

"19.   Said contract of insurance was binding on said defendant company for the following, among other, reasons:·

"(1)   Said policy was absolutely and unconditionally delivered to the insured by the authorized agent of the company, and remained in his possession for seven days, and was entrusted back to the company for the sole purpose of changing the beneficiary.

"(2)   Credit for the payment of the first premium was extended by the local agent of the company at Waynesboro, P. W. Thompson, and by the agent at Augusta, Georgia, I. T. Heard, and those parties became directly responsible for said premium to the head offices of the company, and the extending of such credit, and becoming responsible therefor, was in accordance with the usual course of business of said defendant company with said agents.

"(3)   By accepting the application of the insured for a change of the beneficiaries in the policy already issued and delivered to him, and in making the change so requested, and in returning the policy with the new beneficiaries inserted to I. T. Heard, the agent at Augusta, Ga., for delivery to the insured, the defendant company ratified the act of its agents in making the original delivery of the policy, and in extending credit for the first premium, for which said agents were personally liable  and financially responsible.

"(4)   Said company has waived any right it might have had to reject the act of its agent in making delivery of said policy and giving credit for the payment of the first premium, by allowing the insured to remain under the impression that the policy was in effect from the date of delivery, and that he was protected thereunder.

"(5)   Said company is estopped in this action from pleading the incompleteness and invalidity of the contract of insurance, by reason of the acts of its agents and officers, *and the knowledge the company had of said acts.*   (Italics ours.)

"(6)   It is a common course of business with all the standard insurance companies, among which the defendant company formerly ranked very high, to allow their agents to make delivery of insurance policies, and give credit for premiums, charging the agents

with liability for the premiums on policies so delivered, for a period generally of 60 days; and said course of business was permitted and carried on by defendant company notwithstanding any stipulation in the fine printed matter of the application for insurance; and in accordance with this custom the face of the policy itself contains a direct admission that so far as defendant company itself is concerned, the first premium is admitted to have been paid on the date of the policy, as shown by the following extract: 'In consideration of the payment in advance to the company at its home office of the sum of one hundred fifty-five and 90/100 dollars *at the date hereof,* and upon condition that the annual premium of one hundred fifty-five and 90/100 dollars is paid at or before 3 o'clock P. M. on the 25th day of September in every year, for a term of five full years' etc."

The grounds of the special demurrers will appear in the opinion.

*Callaway & Howard,* for plaintiff in error.

*William H. Fleming,* contra.

BELL, J. (After stating the foregoing facts.)

1. Notwithstanding the acknowledgment in the policy of the receipt of the first premium, under the stipulation in the application, that the contract of insurance should not be in force unless or until a policy should be issued and delivered to the assured and the first premium thereon actually paid during his lifetime and good health, the payment of the premium according to the terms of the agreement was a condition precedent to the liability of the insurer, unless there was a due or unconditional delivery of the policy by the company. *Reliance Life Ins. Co.* v. *Hightower,* 148 *Ga.* 843 (98 S. E. 469); *Volunteer State Life Ins. Co.* v. *McGinnis,* 29 *Ga. App.* 370 (115 S. E. 287), and citations.

The agreement signed by the assured in his application, "that neither agents nor examiners have any authority to modify or enlarge contracts," and the clauses in the policy, that "No alteration of this policy or waiver of any of its conditions shall be valid unless endorsed thereon and signed by an officer of the company, and that "No agent is authorized to modify, alter or enlarge this contract," placed the assured upon notice that the agents of the company were without any authority to put the policy in force unless the first premium thereon was actually paid during his lifetime and good health. The limitations as thus expressed applied

to all agents, including general agents. A principal may qualify the authority even of a general agent, and will not be bound by acts of such agent beyond the scope of his authority, where the person dealing with him has notice of the limitations thereon. *Hutson* v. *Prudential Ins. Co.*, 122 *Ga.* 847 (2) (50 S. E. 1000); *Vardeman* v. *Penn Mutual Life Ins. Co.*, 125 *Ga.* 117 ·(3) (54 S. E. 66, 5 Ann. Cas. 221); *Bank of Commerce* v. *New York Life Ins. Co.*, 125 *Ga.* 552 (3) (54 S. E. 643); *Rome Industrial Ins. Co.* v. *Eidson*, 138 *Ga.* 592 (1, 2) (75 S. E. 657); *Reese* v. *Fidelity Mutual Life Asso.*, 111 *Ga.* 482, 490 (36 S. E. 637). The present case differs from *Fireman's Fund Ins. Co.* v. *Pekor*, 106 *Ga.* 1 (1) (31 S. E. 779), and *Mechanics & Traders Ins. Co.* v. *Mutual Real Estate Asso.*, 98 *Ga.* 262 (1, 2) (25 S. E. 457), in which the suits were upon contracts of fire insurance, and in which it appeared that the agents dealt with had authority to issue and deliver the policies. "Nor was this a case of knowledge of an existing fact by an agent issuing a policy, as in the case of *Johnson* v. *Ætna Insurance Co.*, 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. Rep. 92)." *Brown* v. *Mutual Benefit Life Ins. Co.*, 131 *Ga.* 38 (1), 40 (61 S. E. 1123). It was said even in the *Johnson* case (123 *Ga.* 407), supra, that "as to a matter concerning the time when the contract is to become of force, . . the insured, by accepting the policy, would be bound by its terms, and could not set up a waiver which he was bound to know the company's agent had no power to make." Furthermore, that case was also a fire insurance case, and "Generally the agent of a fire insurance company has power to fill up and issue the policies, and the acts and knowledge of such agent are the acts and knowledge of the company. There is, therefore, manifest propriety in holding that the knowledge of such agent is imputable to the company. This is true even though the policy undertakes to limit expressly the power of the agent. In other words, where the agent is charged by the company with the duty of acquiring knowledge for the company, or is clothed by the company with the actual or apparent authority to act for the company in the issuance of the policy, express limitations upon the power of such agent will not prevent the application of the general rule that knowledge of the agent as to matters within the general scope of his authority is the knowledge of the principal." *New York Life Ins. Co.* v. *Patten*, 151 *Ga.* 185, 187 (106 S. E. 183).

The express provisions of the contract are not avoided by the allegations of the petition with reference to a custom between the company and its agents whereby the agents were allowed to make delivery of policies and give credit for premiums, and the company would charge the agents with liability therefor for a period of sixty days. Under the language of the particular policy the question is not what was the custom and practice of the company in dealing with its agents with respect to the collection and payment of premiums generally, but what was done in the particular case. Parties in the making of contracts may disregard a prevailing custom or usage, and if their stipulations are contrary thereto they will be presumed to have intended to exclude it from the particular agreement. *Haupt* v. *Phœnix Mutual Life Ins. Co.*, 110 *Ga.* 146 (35 S. E. 342).

In the absence of an understanding to the contrary, "a custom of the trade, if of such universal practice as would justify the conclusion that it must by implication have formed a part of the agreement, could be proved in aid of an otherwise incomplete or ambiguous writing. This rule does not authorize proof of a custom where it runs counter to or is inconsistent with an expressed provision of the agreement. *Stamey* v. *Western Union Tel. Co.*, 92 *Ga.* 613, 616 (18 S. E. 1008, 44 Am. St. R. 95) ; *Vardeman* v. *Penn Mutual Life Ins. Co.*, 125 *Ga.* 117 (2), 120 (54 S. E. 66, 5 Ann. Cas. 221) ; *Lowery Lock Co.* v. *Wright*, 154 *Ga.* 867 (4)." *Mays* v. *Hankinson*, 31 *Ga. App.* 473 (3) (120 S. E. 793) ; *Vaughn* v. *American National Ins. Co.*, 19 *Ga. App.* 660 (91 S. E. 1057) ; *Bank of Commerce* v. *New York Life Ins. Co.*, 125 *Ga.* 552 (3) (54 S. E. 653). If the company accepted the liability of either of its agents for the premium, any custom that might prevail between it and its agents in other cases would be immaterial. *Williams* v. *Empire Mutual Life Ins. Co.*, 8 *Ga. App.* 303 (9) (68 S. E. 1082). Any general course of dealings would likewise be immaterial if the company did not agree to the arrangement in the particular case, and the petition fails to allege that it did so agree.

It follows from what has been said that the petition can not be sustained either upon the hypothesis that the company's general agent could and did waive the stipulation that the policy should not become effective until and unless the first premium should be paid in cash during the good health of the assured, or upon the

theory that the stipulation was ineffective because the company was accustomed to accept the liability of its agent or agents in lieu of the payment of the premium by persons generally upon whose lives it issued contracts of insurance,—both of which propositions the plaintiffs (the defendants in error here) have insisted upon.

But, as we have already intimated, if the company made a due and unconditional delivery of the policy, it would be presumed to have waived the requirement that the premium should be actually paid during the good health of the assured as a condition precedent to its liability and to have extended credit for the premium. In that case the recital of payment as contained in the policy "would become a covenant of the contract, and it would not be open to the insurer to deny the payment of the first premium for the purpose of avoiding the policy, although the insurer might deny and disprove the recital merely for the purpose of enforcing payment of the first premium." *Reliance Life Ins. Co.* v. *Hightower,* supra. If the company could thus bind itself by its own delivery, it could do so by ratifying an unauthorized delivery by one of its agents. Civil Code (1910), §§ 3571, 3569. It was alleged in the amendment to the petition that the policy was absolutely and unconditionally delivered to the assured and remained in his possession for seven days, and was entrusted back to the company for the sole purpose of changing the beneficiary; that credit for payment of the first premium was extended both by the local agent and the general agent; that the company accepted and complied with the request of the assured for a change of the beneficiary, and thereafter returned the policy to its general agent "for delivery to the insured;" and that in these things the company was acting with knowledge of the acts of its agents. Such allegations supported further averments by way of conclusion that the defendant ratified the conduct of its agents in making the original delivery of the policy and in extending credit for the first premium, and thereby waived any right it might have had to repudiate such acts, and is estopped from pleading the incompleteness and invalidity of the contract by reason thereof. Civil Code (1910), § 3591.

Knowledge of all the facts is, of course, essential to a ratification (*Dolvin* v. *American Harrow Co.,* 125 *Ga.* 699 (5), 54 S. E. 706, 28 L. R. A. (N. S.) 785), but such knowledge being alleged, the petition set forth a cause of action upon the theory that the

company by ratifying the originally unauthorized unconditional delivery of the policy became bound as if the delivery had been made by its proper officers. The general demurrer was properly overruled.

2. Certain allegations of the petition with respect to acts of the agents upon which the assured relied to effectuate the contract were demurred to, because, as insisted by the demurrers, they were mere conclusions of the pleader, and because the authority of the agents was not shown. Since the relation of principal and agent arises wherever one person either authorizes another to act for him or *subsequently ratifies* the acts of another in his behalf, and since ratification relates back to the act ratified (Civil Code of 1910, §§ 3569, 3591), and since the petition as amended is construed as sufficiently alleging a ratification, there is no merit in any of the special demurrers just alluded to.

The defendant demurred to the allegations by which the plaintiffs tendered the premium into court, upon the ground that the defendant was under no obligation to accept it. If the policy was not effective at the date of the assured's death, the case would not be altered by a subsequent tender of the premium, but since it appears by the averments of the petition that the policy did become effective and thus that the premium should be paid, the tender as set forth in the petition was not irrelevant. The plaintiffs, if they so desired, were entitled to make the tender in order to prevent the accrual of interest thereon.

The defendant demurred to the allegations and prayers for the recovery of attorney's fees and damages, upon the sole ground that there could be no recovery for these items because the plaintiffs had no right of recovery whatever under the policy. This demurrer is disposed of by the conclusion reached above that the petition set forth a cause of action for the recovery of principal. The demurrer does not raise any question as to whether, if a cause of action was otherwise set forth, the facts as set out in the complaint were sufficient to show bad faith.

3. Paragraphs 13 and 14 of the petition were as follows:

"13. As plaintiffs desired possession of the policy in order to attach it as an exhibit to their petition in this suit, they decided to exhaust all reasonable efforts to obtain possession of the policy, and on Dec. 11 addressed a letter to the insurance commissioner

of Georgia, giving him a resume of the facts, and asking whether under the rules of his department he could .afford any relief by. compelling the surrender of the policy.

"14.   The insurance commissioner addressed a communication to the company and received from it a letter under date of December 15, giving as the reason for refusal, as previously stated, that it denied liability on the policy, and the insurance commissioner on December 18, 1922, sent a copy of that letter to said Fleming [plaintiff's attorney], with the statement that the insurance department could afford no relief; leaving a suit at law as the only recourse to plaintiffs."

A special demurrer interposed to these averments, upon the grounds that they were irrelevant, should have been sustained. Even if the insurance commissioner had any authority in such a matter, the action of the plaintiffs therein, being ex parte, could not be taken advantage of by them in the subsequent suit upon the policy.

From what we have said in the first division of this opinion it follows that the court below ought also to have sustained the special demurrers to sub-paragraph 6 of paragraph 19 of the amendment wherein it was sought to bind the defendant by an alleged custom.   The defendant sought by demurrer also to bring into question the allegations with respect to the alleged custom as contained in paragraph 4 of the original petition and sub-paragraph 2 of paragraph 19 of the amendment, but since the demurrer in each of these instances included in the attack other matter which was not subject thereto, there was no error in the court's ruling thereon.   *Southern Ry. Co.* v. *Phillips,* 136 *Ga.* 282 (1) (71 S. E. 414).

It may be that the judgment would not be reversed if there were no other error than in the overruling of the demurrer to the allegations with respect to the communications between the beneficiaries and the insurance commissioner.   These allegations, though irrelevant, might possibly be treated as harmless surplusage if no other error appeared, but it is unnecessary to determine this question, since the court committed substantial error in overruling the demurrer attacking the averments with respect to the alleged custom.

*Judgment reversed.   Jenkins, P. J., and Stephens, J., concur.*