## 20546.   PENN MUTUAL LIFE INSURANCE CO. *v.* BLOUNT *et al.,* trustees.

DECIDED JUNE 11, 1930.

*Callaway & Howard, Fullbright & Burney,* for plaintiff in error.
*Fleming & Fleming,* contra.

LUKE, J.   In 1923, E. Hosea Blount et al., as trustees, brought this action against the Penn Mutual Life Insurance Company on a policy written on the life of Ransom A. Bell.   This case has

already been to this court three times and to the Supreme Court once (33 *Ga. App.* 642, 127 S. E. 892; 165 *Ga.* 193, 140 S. E. 496; 37 *Ga. App.* 756, 142 S. E. 183; 39 *Ga. App.* 429, 147 S. E. 768), and the pleadings and the facts have been so thoroughly threshed out that it would be useless repetition to give the history of the case from its inception. Suffice it to say that it has been held that the local insurance agent made an unauthorized delivery of the policy to the insured, in that he delivered it without payment of the initial premium, and that the controlling question for decision now is whether the court erred in admitting in evidence, over timely objection, certain testimony of the local agent, Heard, designed to show ratification by custom of the practice of delivering policies without requiring payment in cash of the initial premiums.

In the decision in this case, reported in 39 *Ga. App.* 429, this court held that testimony of the local agent, Heard, who delivered the policy in question, to the effect that the company's "agents" were accustomed to take "checks, notes, and cash" in payment of premiums, and that the "agents" knew of this custom, was improperly admitted. The defendants in error undertook to show by the witness Heard on the last trial of the case that when he used the word "agents" on the former trial he meant "the head agents or officers of the company at the home office of the company." After Heard had testified that he meant no such thing, counsel propounded to him certain questions. These questions, with the answers, are set out in the first special ground of the motion for a new trial as follows: Q. "Suppose you delivered a policy and took a note for the premium, were you not responsible to the company for the payment of the premium?" A. "In the event of nonpayment of a note which had been approved by the company, we were responsible to the company for net term insurance, and were not required to pay the regular premium." Q. "Then the company did know that you took notes?" A. "Yes, but in this case no note was ever given." Q. "When you say the company knew, you meant that the executive officers of the company at the home office knew that you took notes for premiums?" A. "Yes, they knew it. They knew that we had taken a note when we had sent it to the auditor's department." Q. "The company likewise knew that you took checks?" A. "Yes, during the lifetime and good health of the applicant." The foregoing testi-

mony of Heard was objected to "because any custom or practice by the defendant (which said testimony is offered to establish) with other persons, or under other circumstances than the proven facts of this transaction, can not be proven to contradict the express terms of the contract between the parties, which provides that 'the contract of insurance shall not be in force unless or until a policy shall be issued and delivered to me, and the first premium thereon actually paid, during my lifetime and good health,' without violating two rules of evidence, one forbidding the substitution of a practice or custom for an express contract provision in conflict with it; and the other rule of evidence, which forbids the introduction of parol evidence to vary the terms of a written contract which is neither ambiguous nor silent in its terms as to the matter to which the offered evidence would relate."

In the second special ground the same objection was interposed to the following testimony given by the same witness on the former trial of the case: "It is a custom with us, under our practice and rules, to make delivery of a policy by taking a check. We would take a check on New York, New York exchange, when the party is considered good. As to how many days it takes to get a report that the check has been paid, I deposit it and get credit for it the next morning. I would not send it through any mails to New York. It would be deposited in Augusta. I have been doing that for a great many years. Of course, some of the agents know about our accepting a check on premiums. The agents know that we take notes, checks, and cash."

The testimony adduced on the former trial of the case (39 *Ga. App.* 429) is practically the same as that in the present record, with the exception of the testimony of Heard which is quoted above. In the case referred to it was distinctly held that the evidence did not show ratification by the insurer of the unauthorized delivery of the policy to the insured. We gravely doubt if the additional evidence adduced on the last trial of the case would warrant a holding that the company ratified the act of its agent in delivering the policy. However, as we think such evidence was clearly inadmissible, and that the court committed reversible error in admitting it, the judgment of the trial court must be reversed because of the errors pointed out in the first and second grounds of the motion for a new trial. The law sustaining this conclusion is found in

this same case (33 *Ga. App.* 642 (3 *a*)) : "The rule that a custom of a business or trade may be binding upon the parties to a contract when it is of such universal practice as to justify the conclusion that it became by implication a part of the contract (Civil Code of 1910, § 1 (4)) can not make the custom a part of the contract where, as in the instant case, the alleged custom is inconsistent with the expressed provisions of the agreement." In the decision the law is concretely applied to the case in this language (p. 650) : "The express provisions of the contract are not avoided by the allegations of the petition with reference to a custom between the company and its agents whereby the agents were allowed to make delivery of policies and give credit for premiums, and the company would charge the agents with liability therefor for a period of sixty days. Under the language of the particular policy the question is not what was the custom and practice of the company in dealing with its agents with respect to the collection and payment of premiums, but what was done in the particular case. Parties in the making of contracts may disregard a prevailing custom or usage, and if their stipulations are contrary thereto they will be presumed to have intended to exclude it from the particular agreement. . . If the company accept the liability of either of its agents for the premium, any custom that might prevail between it and its agents in other cases would be immaterial. . . Any general course of dealing would likewise be immaterial if the company did not agree to the arrangement in the particular case, and the petition fails to allege that it did so agree. It follows from what has been said that the petition can not be sustained either upon the hypothesis that the company's general agent could and did waive the stipulation that the policy should not become effective until and unless the first premium should be paid in cash during the good health of the assured, or upon the theory that the stipulation was ineffective because the company was accustomed to accept the liability of its agent or agents in lieu of the payment of the premium by persons generally upon whose lives it issued contracts of insurance,—both of which propositions the plaintiffs (the defendants in error here) have insisted upon."

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*