**EDWARD SALES CO. v. HARRIS STRUCTURAL STEEL CO., Inc.**

(District Court, D. Maine, S. D. January 15, 1927.)

1. **Courts ⬢⟶255—Federal courts have no jurisdiction, except as conferred by statute.**

United States courts, which are created by statute, can have no jurisdiction, except as conferred by statute, and there is no presumption in favor of jurisdiction.

2. **Courts ⬢⟶274(14)—Corporation not having established office, although furnishing plans for sales agent, held not "doing business" within state authorizing federal court jurisdiction (Comp. St. § 1033).**

Corporation, having no regular established office within state and no employees, officers, or members stationed therein, although furnishing plans and specifications for its state sales agent, held not "doing business" within state to extent authorizing federal court jurisdiction, under Comp. St. § 1033.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

3. **Corporations ⬢⟶642(6½)—Corporation is not doing business within state by merely appointing agent for transaction of future business therein; "transacting business" (Comp. St. § 1033).**

A foreign corporation is not "transacting business" in state, within meaning of Comp. St. § 1033, by merely appointing an agent for transaction of future business therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transacting Business.]

4. **Corporations ⬢⟶642(7)—Foreign corporation engaging in litigation does not constitute doing business within state.**

Foreign corporation engaging in litigation does not constitute doing business, within meaning of Constitution and statutory provisions against doing business in state without compliance with prescribed conditions.

5. **Commerce ⬢⟶46—Corporations ⬢⟶642(6) —Shipping small quantity of steel into state by foreign corporation is "interstate commerce," and not doing business therein.**

Shipping small quantity of steel into state by foreign corporation held an act of "interstate commerce," and not doing business within state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

6. **Corporations ⬢⟶642(6)—Isolated sales or incidental transactions are not "carrying on business" within state by foreign corporation.**

Isolated sales or incidental transactions in state by foreign corporation do not constitute "carrying on business" therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Carry on Business.]

7. **Records ⬢⟶7—Power of attorney executed by corporation, with subsequent instructions to Secretary of State not to file paper held not filed (Rev. St. Me. 1916, c. 51, §§ 107–109).**

Where foreign corporation, after executing power of attorney in accordance with Rev. St. Me. 1916, c. 51, §§ 107–109, instructed Secretary of State not to accept papers for filing, they cannot be regarded as filed as against such corporation, so as to bring it within jurisdiction of federal court.

8. Records ⬅➡7—Paper to be "filed" must have received some action on part of receiving official.

Some action on part of receiving official is necessary, or at least an intention on his part to treat paper as similar papers are treated in regular routine of office, in order that papers may be regarded as "filed."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, File.]

9. Principal and agent ⬅➡37—Power of attorney may be revoked, though in terms irrevocable.

Power of attorney can be revoked, even if in terms irrevocable, since, though it may be a breach of contract with attorney, maker has power to revoke, even if he has no right to.

At law. Action of assumpsit by the Edward Sales Company against the Harris Structural Steel Company, Inc. On motion by defendant to set service aside. Motion granted.

Clark Chapman, of Portland, Me., for plaintiff.

Cook, Hutchinson & Pierce, of Portland, Me., for defendant.

PETERS, District Judge. The plaintiff, a Maine corporation, brought this action of assumpsit in this court against the defendant which is a New York corporation having its principal and usual place of business at New York City. Service was made by delivering a summons to John F. A. Merrill, Esq., described in the return as the defendant's "attorney in the state of Maine, duly appointed." The defendant appeared specially, challenged the jurisdiction of this court, and moved that the service be set aside.

Questions of fact arising on the motion were heard by me and my findings follow.

[1] There is no presumption in favor of jurisdiction. United States courts, which are created by statute, "can have no jurisdiction but such as the Statute confers." Sheldon v. Sill, 8 How. 441, 12 L. Ed. 1147.

The act of 1875 (18 Stat. 470), relating to venue, a substantial re-enactment of the act of 1789 (1 Stat. 73), provides that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process," etc.

The present statute is not worded exactly the same (Comp. St. § 1033), the word "found" being omitted, but the law is the same. By the change it was "by no means intended to discard the long-established doctrine that the defendant must be legally found and served in the district in which he is sued." Harland v. United Lines Tel. Co. (C. C.) 40 F. 312, 6 L. R. A. 252.

A corporation may be "found" in a district, if it has to some extent moved into the district and is doing business there. "Jurisdiction taken of foreign corporations * * * does not rest upon a fiction of constructive presence, like 'qui facit per alium facit per se.' It flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established." This is the present definite rule laid down by the Supreme Court in Bank of America v. Whitney Central Nat. Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594.

[2] Consequently it is necessary to determine at the outset, before taking up the effect of the Maine statute, whether the defendant was doing business in Maine in such a manner and to such an extent as to warrant the inference that it was there present.

The facts seem to be that the defendant corporation, with its headquarters and offices in New York City, was engaged in the business of finishing and fabricating structural steel. In January, 1926, it made a written contract with the plaintiff (in substitution for a similar one of the year before with the plaintiff's president individually), in which it was provided that:

"The Harris Structural Steel Company, Inc., hereby appoints the said Edward Sales Company, Inc., as the sole and exclusive agents of the Harris Structural Steel Company, Inc., to represent the corporation of the first part in obtaining contracts for the fabrication and erection of structural steel in the states of Maine, New Hampshire, Vermont, and Massachusetts, excluding Boston, Mass., the duty of said agent being to procure plans and specifications, forward them to the corporation of the first part for quotations on the work, and secure contracts for fabrication, all in the name of the Harris Structural Steel Co., Inc."

Upon receipt of plans and specifications from the agent, the Harris people were to make quotations, whereupon the agent could increase the bid to cover its own profit. All contracts procured by the agent were to be in the name and subject to the approval of the Harris people, and executed by an officer of their corporation. During 1925 and the first half of 1926 the Edward Sales people, as agents, and their individual predecessor, solicited business and actually sold about $2,800 worth of steel, which was shipped into Maine in three lots invoiced to

the Edward Sales Company. This was the only material ever shipped into Maine. No material was ever manufactured or labor employed by the defendant in Maine.

The Edward Sales people have an office in Portland with their name on the door. They were furnished some of the defendant's letter heads and used them in Maine. It was claimed by the Sales people that Harris, an officer of the defendant, agreed to pay and did pay $500 toward the rent of the office mentioned. The effect of this testimony was considerably impaired by the counterclaim that the $500 was a loan, and a note for that amount was produced, given to the defendant by the plaintiff's president at the time of the payment to him of $500. It was claimed, on the other hand, that the note was not to be paid, and it was not paid. But the fact remains that the defendant had no regular established office of its own in Maine, and no employees, officers, or members stationed there.

Early in 1926 negotiations were had by the Sales Company (participated in by an officer of the defendant) with one De Puy for the building of a hotel in Portland. Plans were drawn and figures made.

If this matter ever went beyond the conversation stage, at least no formal contract was signed and no work was done.

At the very earnest suggestion of the plaintiff's president to an officer of the defendant, a suit was brought against De Puy in the name of the defendant by Mr. Merrill, as attorney for the defendant, and that suit is still pending in the Maine courts. This was to recover lost profits arising from an alleged contract to build the hotel.

At about the same time the Sales Company was negotiating with the Paul Hildreth Company, of Lewiston, to build a hotel there. These negotiations bore fruit to the extent of a contract, but did not result in any construction. It is claimed by the plaintiff that this contract was procured in its name for the defendant, that the defendant accepted and assumed it, and agreed to pay the plaintiff for procuring it. The instant suit is brought by the plaintiff to recover under that very agreement to pay, and for the purposes of this discussion it may be assumed that the plaintiff's allegations are well founded.

These and similar activities of the defendant in Maine are not such as to warrant the inference that the defendant corporation was there present.

[3] The appointment of the plaintiff as an agent to procure business in this state was the basis of its activities. But "a foreign corporation is not doing, carrying on, transacting or engaging in business in a state, within the meaning of the statutes under consideration, by merely appointing an agent for the transaction of future business therein." 14a Corp. Juris, p. 1279.

[4] The defendant brought a suit in Maine, but "it is well settled that engaging in litigation does not constitute doing business within the meaning of constitutional and statutory provisions, against doing business in the state without compliance with the prescribed conditions, requirements," etc. 14a Corp. Juris, p. 1276.

[5] The shipping of a small quantity of steel into this state was an act of interstate commerce, and is not to be construed as doing business in the state. Julius Kessler & Co. v. Perilloux (C. C.) 127 F. 1011; Buck Stove v. Vickers, 226 U. S. 205, 33 S. Ct. 41, 57 L. Ed. 189; Vaughn Co. v. Lighthouse, 64 App. Div. 138, 71 N. Y. S. 799.

[6] Isolated sales or incidental transactions in a state by a foreign corporation do not constitute "carrying on business." 14a Corp. Juris, p. 1276.

[7] The plaintiff says, however, that sections 107–109 of chapter 51 of Revised Statutes of Maine, when applied to the happenings in the summer of 1926, will bring the defendant within the jurisdiction of the court, showing an implied consent to be sued in Maine.

The statute referred to provides that a foreign corporation, which has a usual place of business in the state, or which is engaged in business here, shall "before doing business" appoint in writing a local attorney upon whom process may be served; that his authority shall continue while there is any outstanding liability in the state against the corporation; that the appointment shall continue in force till revoked by a writing appointing another in his place; and that the power of attorney "shall be filed in the office of the secretary of state and copies certified by him shall be sufficient evidence thereof."

It seems that in April, 1926, at the time the suit was brought by the defendant here against De Puy by Mr. Merrill, who acted as attorney for both the plaintiff and the defendant here till their interest became diverse, he advised that a power of attorney to him and other papers should be executed by the Harris Company and sent to him for filing with the secretary of state as provided by the above statute. A proper power of attorney, containing the provisions mentioned in the statute, was accordingly drawn,

executed, and sent to Mr. Merrill; he having advised that it was a prerequisite to prosecuting the suit against De Puy. The necessary money for filing fees not having been sent with the power, Mr. Merrill held it in his office and on June 10th Mr. Harris, an officer of the defendant, offered to give Mr. Merrill the cash for the fees, but the latter said that it would be as well to send check later, and that he would forward the papers to the secretary of state. On June 15th he did mail the papers to Augusta, but later in the same day Mr. Harris telegraphed him from New York, revoking all authority to proceed further, as follows:

"We hereby revoke your authority to represent us in any respect. File no papers. Withhold application for registration."

This was confirmed by letter of the same date. Mr. Merrill replied:

"Before the receipt of either your telegram or letter, I had sent the papers, with my appointment as your attorney, necessary for your registration in Maine, to the secretary of state, in accordance with your agreement with me when I commenced an action for you against Eli D. De Puy, writ being dated April 5, 1926. This case is still pending and I have an interest in it. Barring my rights in this matter, I shall be pleased to be relieved from representing you in any other respect."

On June 15th, also, Mr. Harris had wired the secretary of state as follows:

"Previously executed application and other papers for authority to do business in Maine. Authorized John F. A. Merrill to file same. Have revoked his authority. Do not accept any papers for filing in connection therewith without further instructions addressed by an officer of this company direct to you."

This telegram was received by the secretary of state before the papers arrived at his office. When they did arrive, he simply held them intact and separate from other papers, and has so held them awaiting the result of this controversy. In the usual course of business in his office, on receiving them for filing, he would first enter them in a cash book or entry book, then, if found in proper form, would place his certificate of filing and recording on the back, and issue his certificate to the corporation showing its authority to do business. None of these things was done.

The plaintiff claims that the power of attorney and other required papers were "filed" with the secretary of state in compliance with the statute, and that as a result

the defendant is held to an implied agreement that it may be sued here, and that might be true in the ordinary case of filing such papers in the regular course by authority of the corporation signing them. Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853; Boultbee v. International Paper Co. (C. C. A.) 229 F. 951.

The wording of the statute is somewhat peculiar. It says that a foreign corporation "engaged in business in this state" shall "before doing business in this state" file these papers. This probably means that such a corporation intending to engage in business in the state shall, before doing so, file the papers. This defendant may have intended to engage in business here, or it may have been advised that to bring a suit against a citizen it would have to file the papers with the secretary of state. I see no reason, however, why it could not change its "mind" about engaging in business, and it is not impossible that it was advised after Mr. Harris returned to New York that the filing of the papers was not a technical prerequisite to bringing the suit. At any rate he did all he could to revoke the power of attorney in question on June 15th before it was received in Augusta.

Should the papers be regarded as "filed," as against the defendant, regardless of the situation outlined?

I do not think so. There are numerous definitions of "filing." In Reed v. Inhabitants of Acton, 120 Mass. 130, it is said:

"A document may properly be said to be filed with the town clerk when it is placed in his official custody, and is deposited in the place where his official records and papers are usually kept."

In U. S. v. Lombardo, 241 U. S. 73, 36 S. Ct. 508, 60 L. Ed. 897, the Supreme Court says:

"A paper is filed when it is delivered to the proper official and by him received and filed."

[8] It would seem that some action on the part of the receiving official is necessary, or at least an intention on his part to treat the paper as similar papers are treated in the regular routine of his office.

Here both elements are lacking. The regular course of filing was interrupted. The progress of the paper was stopped at the door of the secretary's office; nor did he have any intention of filing it when received, as he had been warned by the maker not to do so. He has refused to file it. He has consistently tried to leave the rights of the parties where they were before the mail ar-

rived that morning. On the advice of the Attorney General he has refused, quite properly, to give the paper to either party till this litigation ceases.

Under the circumstances, I cannot hold that the rights of the parties were other than they would have been, had the power of attorney not been mailed to Augusta by Mr. Merrill.

[9] Thus it comes down to the question as to whether the power of attorney was revoked. The maker could do no more to revoke it than he did. The attorney acceded to the revocation, saving his rights in the suit he had brought against De Puy. On familiar principles such a power can be revoked even if in terms irrevocable. It may be a breach of contract with the attorney, but the maker has the power to revoke, even if he has not the right to. Of course, the exceptions, like a power coupled with an interest, one given as part of a security, etc., do not apply here. Also the plaintiff here had ample notice of the situation some time before this service was made. 2 Corpus Juris, 151; 6 Corpus Juris, 677.

Service was made on Mr. Merrill as alleged attorney some time after the revocation and after the plaintiff had notice of it.

It follows that the motion of the defendant must be granted.