(No. 5671.   May 15, 1931.)

In re Application of JOHN McFAYDEN and L. B. DEN-
NING for a Certificate of Convenience and Necessity
and PUBLIC UTILITIES COMMISSION OF THE
STATE OF IDAHO, Respondents, v. PUBLIC UTILI-
TIES CONSOLIDATED CORPORATION, a Corpora-
tion, Appellant.

[299 Pac. 671.]

Merrill & Merrill, for Appellant.

Hawley & Worthwine, Jones, Pomeroy & Jones and Fred J. Babcock, Attorney General, and M. H. Greene, Assistant Attorney General, for Respondents.

McNAUGHTON, J.—This is an appeal from an order of the Public Utilities Commission of Idaho granting to John McFayden and L. B. Denning a certificate of conve-

nience and necessity to construct, maintain and operate gas transmission lines, distribution lines and systems, and to supply gas for light, heat, power and other purposes in the counties of Franklin, Oneida and Bannock, in the state of Idaho, and to the cities of Preston, Malad and Pocatello, and the towns of Downey, McCammon and Franklin in the state of Idaho, and to the inhabitants thereof.

The proceeding is narrowed to a contest between a utility furnishing manufactured gas and a utility offering to furnish natural gas for the field at Pocatello and its suburb. The appellant Public Utilities Consolidated Corporation now occupies, and it and its predecessors for twenty years have occupied, the Pocatello field furnishing manufactured gas.

The applicants offer to procure an extension of the natural gas pipe line now serving Salt Lake City and Ogden, in which they are interested, into Idaho, and offer to construct, maintain and operate gas transmission lines and systems for the purpose of supplying natural gas for light, heat, power and other purposes in the communities referred to.

After a full and exhaustive hearing before the Public Utilities Commission the application was granted.

The Public Utilities Consolidated Corporation appeals, questioning the right of the Commission to grant the certificate as to Pocatello and its suburb Alameda, now being served manufactured gas by appellant.

The appeal is predicated upon eleven specifications of error. However, chap. 72 of the 1921 Session Laws provides:

"The review on appeal shall extend no further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any rights of the appellant under the constitution of the United States or of the State of Idaho."

Appellant's assignments are grouped and treated under these two general heads, and will be so considered by us.

■■ It is claimed, first, the Commission did not regularly pursue its authority in receiving the testimony offered by respondents pursuant to their petition because the appli-

cation did not conform in several particulars pointed out to rules 5 and 6, promulgated by the Commission.

Rule 5 provides: "Every application must be verified by the applicant. If the applicant is a corporation or association any officer or director thereof may verify the application." In this case it appears neither the application of petitioners nor the remonstrance of appellant is verified personally by the individual or officers of the corporation on account of absence from the state, but both are verified upon personal knowledge by their respective attorneys.

Objection also was made that no map of the contemplated new construction was filed as required by rule 6. It appeared the respondents had no such maps, intending to avoid the expense of detailed surveys and maps unless they could secure a certificate of necessity from the Commission authorizing them to enter Pocatello. However, respondents offered to make and file such maps before beginning construction, should certificate of necessity be granted them, and they were ordered to do this. Other less specific defects were pointed out.

Rule 10 provides: "In special cases, for good cause shown, the Commission may permit deviations from these rules in so far as it may find compliance therewith to be impossible or impracticable."

We have concluded that, from the nature of this case, the objections to the application pointed out are more technical than substantial, and that the Commission did not put appellants to any serious disadvantage by overruling the objections. C. S., sec. 2478, authorizes the Commission to adopt rules, but neither the rules in question nor any particular rule or rules are required by statute. The Commission promulgated these rules for its assistance and benefit in cases requiring such formality and data, and it is thought compliance with or waiver of them is within its sound discretion. We find no abuse of such discretion in overruling appellant's objection.

The application discloses that the respondents do not desire the certificate on behalf of any existing corpora-

tion, but discloses that if the certificate is granted to them the operations in Idaho necessary to provide the service will be carried out by a corporation which they will cause to be organized in Idaho for that purpose and for which they have provided three and one-half million dollars in funds, and to which the certificate if procured will be assigned.

It is claimed this is contrary to the requirements of C. S., sec. 2476, which in part provides:

"Before any certificate of convenience and necessity may issue a certified copy of its articles of incorporation, or charter, if the applicant be a corporation, shall be filed in the office of the commission. . . . . "

Appellant contends that the corporation should have been formed and application in its behalf should have been made, and claims that respondents are not the real parties seeking the certificate. The corporation is not in existence. If organized at all it will be organized by respondents as an agency in carrying out petitioner's purposes as authorized by the Commission. Their full exact purpose is shown. This objection we think was properly overruled.

A question of serious import to appellant, and perhaps the most vital question in the case, is raised under the second heading. It has to do with appellant's vested property interests in Pocatello, and its claim of right to protection in its field from competition dangerous to its future business.

It is admitted that appellant is and that it and its predecessors have for a great many years rendered adequate service of its kind in supplying manufactured gas to the inhabitants of Pocatello. Appellant assumes, and I think we may assume, that such a company, however well organized and managed, cannot hope to successfully compete with a natural gas company entering the same field.

As between two utilities with like ability to furnish like service under our public utility law, the company already serving a given field has a right to preference. (*Kansas Gas & Electric Co. v. Public Service Com.*, 124 Kan. 690, 261 Pac. 592; *United Fuel & Gas Co. v. Public*

*Service Com.,* 103 W. Va. 306, 138 S. E. 388.) It is the purpose of our law to protect that right by the requirement that a newcomer before entering the field shall procure a certificate of convenience and necessity to construct and operate a utility in competition. If the new service offered has no advantage over the old from the public viewpoint, other than mere competition under similar basic costs, then the convenience and necessity for it, under the public utility law, would be wanting and the utility in the field would be entitled to protection against duplication and unwarranted competition. However, if an applicant can and does in good faith offer a better or a broader service a different question is presented. In such case the applicant is offering the public more than sheer competition. In reality it is offering a different service.

We think a service of manufactured gas is not entitled to protection to the extent of denial of a natural gas service. The evidence justified the Commission in concluding that the latter is a different service as cleaner and more serviceable in the more extensive heating uses. "Protecting existing investments, however, from even wasteful competition must be treated as secondary to the first and most fundamental obligation of securing adequate service for the public." (Pond, Public Utilities, 3d ed., sec. 746.)

A service that is inferior is not adequate. "The granting or withholding of the certificate is an exercise of the power of the state to determine whether the rights and interests of the general public will be advanced by the prosecution of the enterprise which it is proposed to carry on for the service of the public." (*Oro Electric Corp. v. Railroad Com.,* 169 Cal. 466, 147 Pac. 118.)

It is finally contended by appellant that even granting that convenience and necessity for natural gas service exists at Pocatello, the policy of the law under the facts of this case gives a preference to appellant in delivering that service when available on account of its large investment in the distribution system of its plant now distributing manufactured gas as a public utility.

It was claimed at the hearing by other protestants that large investments had been made in endeavoring to develop prospects for natural gas in the vicinity of Pocatello. Those protestants desired to furnish such gas to appellant for distribution in Pocatello and asked that the certificate be not issued for a reasonable length of time during which these fields might be proved. It was estimated at the hearing that ninety days would be such a reasonable time. The certificate was delayed more than ninety days, and after such period it seemed improbable that natural gas could be developed locally, and that if obtained it must be piped in from foreign fields.

It is now claimed that if a certificate of convenience and necessity were issued to respondents as requested, except as to Pocatello, conditioned upon the respondents furnishing at a reasonable price natural gas at the city gates to appellant for distribution, or including Pocatello, then conditioned upon respondents purchasing appellant's works, the costs of duplicating the Pocatello system would be saved to all parties concerned, and that this court should in this respect modify the order of convenience and necessity.

No doubt, "the theory of the regulation of municipal public utilities by the state through such a commission (*Public Utilities*) is to avoid competition which is now generally recognized as a needless economic waste and an entirely insufficient method of securing the necessary regulation and control. Under this method the state through its commission takes the place of competition and furnishes the regulation which competition cannot give, and at the same time avoids the expense of duplication in the investment and operation of competing municipal public utilities." (Pond, Public Utilities, 3d ed., sec. 901.) This doctrine is approved by this court in *Idaho Power Co. v. Blomquist*, 26 Ida. 222, Ann. Cas. 1916E, 282, 141 Pac. 1083. It is thought, however, in this case we have not conditions on which that doctrine can operate.

It appeared quite conclusive on the hearing that the only business respondents cared to undertake in Idaho

was the sale of gas at retail; that the chief field was Pocatello, and that other smaller communities were attractive only incidentally. The Commission was without power to force respondents to take something less than is required to attract them into the field. The respondents were not yet a utility within the Commission's jurisdiction. They had a right to come into the field or not. It appeared quite probable petitioners would not enter the field as wholesaler to Pocatello's requirements, and as retailer to the smaller communities along the way. The Commission was justified in concluding that to impose such conditions might prove equivalent to denying the right to a natural gas service, which is available, to Pocatello and the other communities. Such denial in behalf of the private interests of respondents would be beyond the province of the Commission. Nor could the Commission jeopardize this right of the public in attempting to force a sale of appellant's plant.

We think the record discloses that there exists a public convenience and necessity for natural gas service in the counties of Franklin, Oneida and Bannock, and in the cities of Preston, Malad and Pocatello, and the towns of Downey, McCammon, Franklin and Alameda, in the state of Idaho, and that respondents are able to and are desirous of supplying that service. We think in granting the certificate therefor the Public Utilities Commission regularly pursued its authority in the hearing on the application of respondents, and violated no constitutional right of appellant in its order granting the application.

It is therefore ordered that the order of the Public Utilities Commission be affirmed. Costs to respondents.

Budge, Givens and Varian, JJ., concur.