**COMMERCIAL STANDARD INS. CO. v. GARRETT.**

**GARRETT v. TRANSPORTATION INDEMNITY CO. et al.**

**Nos. 922, 923.**

Circuit Court of Appeals, Tenth Circuit.
April 11, 1934.

Ivor O. Wingren, of Denver, Colo. (Jas. C. Cheek and Frank E. Lee, both of Oklahoma City, Okl., on the brief), for Commercial Standard Ins. Co.

T. H. Williams, Jr., and Alger Melton, both of Chickasha, Okl., for cross-appellant.

Robt. R. Rittenhouse, of Chandler, Okl. (F. A. Rittenhouse and John F. Webster, both of Oklahoma City, Okl., on the brief), for Transportation Indemnity Co.

Duke Duvall, of Oklahoma City, Okl. (J. B. Dudley and Geo. F. Short, both of Oklahoma City, Okl., on the brief), for American Fidelity & Casualty Co.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Ethel O'Neal Garrett, for herself and as next friend of her three minor children, brought this action against the Transportation Indemnity Company, the American Fidelity & Casualty Company, and the Commercial Standard Insurance Company to recover upon three policies of liability insurance.

John T. Reynolds, doing business as the Auto Transport Company, was engaged in business as a motor carrier for hire under permit No. 1732 issued to him by the Corporation Commission of Oklahoma on October 18, 1930.

O. S. 1931, § 3708, requires, as a prerequisite to the issuance of such a permit, that the motor carrier file a liability insurance policy or bond with the Corporation Commission "covering public liability and property damage," and provides that "after judgment against the carrier for any such damage, the injured party may maintain an action upon such policy or bond to recover the same."

O. S. 1931, § 3701, provides that:

"The Corporation Commission shall have the power and authority by general order or otherwise to prescribe rules and regulations applicable to any or all motor carriers."

Rule 32 of Rules and Regulations of the Corporation Commission in part reads as follows:

"(b) Original or duplicate indemnity or liability insurance policy or policies carried for the protection of the public or other evi-

dence of adequate protection, shall be filed with the Commission for record.

"(b) No contract or policy of insurance for the protection of the public against death, injury or damage resulting from the operation of a motor carrier shall be entered into or secured for a period of less than one year and no such contract or policy shall be altered by substitution of another for the original risk without notice to and approval in writing by the Commission."

The Corporation Commission by regulation adopted motor vehicle form E. We set out the material parts thereof in note.[1]

While motor vehicle form E is attached to regular policies issued by insurers, in reality it constitutes the contract of insurance as between the insurer and the state.

Reynolds filed with the Corporation Commission Transportation Company policy 38,638 for the term from October 27, 1930, to October 27, 1931. Motor vehicle form E was attached thereto.

On April 9, 1931, the Transportation Company wrote a letter to the Corporation Commission, which is identified in the record as Ex. 4, and reads as follows:

"We were recently advised by Eberle &

---

[1] "Motor Vehicle Form E

"Insurance Policy Endorsement.

"The policy to which this endorsement is attached is written under and pursuant to the provisions of chapter 113 of the Session Laws of Oklahoma, 1923, and it is to be construed in accordance therewith and the rules and regulations of the Corporation Commission of Oklahoma and implies an acceptance of such rules and regulations, and is payable to the State of Oklahoma for the benefit of all persons who may suffer personal injuries, including death, or property damage due to any negligence of the assured, his/its agents, employes, or representatives in the operation or use of any motor vehicle under certificate of public convenience and necessity No. .......

"In consideration of the premium stipulated in the policy to which this endorsement is attached the insurer hereby waives a description of the motor vehicles operated or used under said certificate and agrees to pay any final judgment rendered against the holder of such certificate for personal injuries, including death, or damage to property other than that of the holder of said certificate due to the negligence of said holder, his/its agents or employes, or representatives, in the operation or use of any motor vehicle, whether listed in the original schedule of motor vehicles filed with the original application or whether it be an additional, substituted or emergency vehicle operated under said certificate by any order or rule of the Corporation Commission, within the limits of the schedule hereinafter set out, and further agrees that upon its failure to pay any such final judgment within sixty days from the date of its rendition or final affirmance on appeal, the judgment creditor may maintain an action against it in any court of competent jurisdiction to enforce such payment. This policy shall be a continuing indemnity. * * * Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof

or of any law of the state by the assured shall relieve the insurer from any liability hereunder or from the payment of any such judgment.

"No condition, provisions, stipulation or limitation contained in the policy or any other endorsement thereon, nor the violation of any of the same by the insured shall affect in any way the right of any person injured in his person or property by the negligence of the insured or relieve the company from the liability provided for in this endorsement, or from the payment to such person of any such judgment, to the extent and in the amounts set forth in the schedule shown thereon; but the conditions, provisions, stipulations and limitations contained in the policy and any other endorsements thereon shall remain in full force and be binding as between the insured and the company. * * *

"Any provision either in the body of the policy of which this endorsement is attached or in any other endorsement thereon or attached thereto in conflict with or contrary to the provisions of this endorsement shall be deemed to be cancelled hereby. * * *

"The policy to which this endorsement is attached shall not terminate either by expiration or cancellation until after twenty days notice of such termination in writing by the insurer to the Corporation Commission of Oklahoma. * * *

"Attached to and forming a part of policy No. ...... issued by................

..........................................
(Name of Insurer)

to ......................................

..........................................

..........................................
(Signature of Insurer)

"Accepted for filing with the Corporation Commission of Oklahoma, this ......
day of .................... 19........

..........................................
(Directors of Motor Carriers)

"Attest:

..........................................
"Secretary."

Company, General Agents that there is now pending a death claim against the Auto Transport Company. In Eberle & Company's letter to us they set out that your department insist that our company is liable as you do not have a record of the cancellation of our policy. For your information I am attaching hereto photostatic copy of the cancellation evidence that we have in our file."

The photostat copy referred to in such letter is identified as Ex. 5, and reads as follows:

"Corporation Commission
"State of Oklahoma
"Motor Bus Department.
"Oklahoma City, Oklahoma.
"1732.
"cc No. ———— Operator Auto Transport Company
"Policy No. 38638      Address St. Louis, Mo.
"Transportation Indemnity Co.
"New York

"This will acknowledge receipt of notice from you of the cancellation of the above numbered policy effective on the 11th day of January, 1931.

"The rules of this Commission do not permit the department to return cancelled policies as they are considered a part of the official records, but a copy of this letter will be attached to the policy, in the files of the Commission, and the assured will be notified of the withdrawal of insurance by your company.

"Corporation Commission
"Motor Bus Department
"By Patton
"Copy sent to assured ———— by ————
"Corporation Commission of Oklahoma
"Received January 1931
"Motor Carrier Dept."

Holland, an insurance broker at Oklahoma City, attended to the insurance requirements of Reynolds. In January, 1931, he was also local agent for the Transportation Company. Holland testified that after receiving oral notice from Eberle & Company, general agents for the Transportation Company, to cancel policy 38,638, he wrote on a blank form for acknowledging receipt of notice of cancellation, the following: "Transportation Indemnity Company, New York"; "Auto Transport Company, St. Louis, Mo.;" "11th day of January, 1931"; and then delivered it to M. B. Hickman; that it was customary for the agents to fill in the blanks on such forms; that he did not write the name Patton or place the commission's receiving date stamp thereon; and that he received the original, of which Ex. 5 is a copy, from the motor carrier department of the commission through the mail.

M. B. Hickman testified that he was director of the motor carrier division of the commission; that he held the position in 1930 and 1931; that he had charge of the issuance of permits and the handling of insurance policies; that Moody Patton, an employee under him, looked after the filing of insurance policies and handled cancellation notices; that permits, bonds, and insurance policies were filed in numerical order under the numbers of the permit or certificate; that no permanent record of each instrument was made; that instruments, correspondence with reference thereto, and matters of that kind were placed in loose leaf folders and filed in a filing cabinet; and that the cabinet was not kept locked.

He further testified that on February 24, 1931, there was no evidence in his files of the cancellation of policy 38,638, and that the first notice he had of the claimed cancellation thereof was the letter identified as Ex. 4; that Ex. 5 first appeared in the office of the commission on April 9, 1931; that the commission made and kept carbon copies of the original acknowledgment of receipt of notices of cancellation; that there was no carbon copy of Ex. 5 in the files of the commission; that he did not know whether the signature on Ex. 5 was that of Patton; that he did not sign the name Patton to Ex. 5; and that the records of the commission did not show any notice from Holland or from Eberle & Company of intention to cancel policy 38,638.

Moody Patton testified that in January, 1931, he was auditor for the motor carrier department of the Corporation Commission, and had charge of the insurance files and cancellation of insurance policies; that he did not receive on January 6, 1931, notice from the Transportation Company, Holland, or Eberle & Company of intention to cancel policy 38,638; that he never at any time acknowledged in writing receipt of notice of intention to cancel such policy; that he did not sign Ex. 5; that the name Patton thereon was not in his handwriting; and that he generally signed acknowledgments of cancellation notices "Moody Patton."

On January 12, 1931, Scruggs & Davis as agents for the American Company, at Holland's request, issued American Company policy 8007. On the same day Holland as insurance broker for Reynolds filed such policy in the office of the commission. No. 1732 was endorsed on the back thereof. Holland testified that at the time he filed such policy,

he told M. B. Hickman that it was in lieu of policy 38,638. Form E was attached to policy 8007.

On January 19, 1931, the American Company sent the following notice to the commission:

"Please accept notice of cancellation of American Fidelity and Casualty Company policy No. 8007, covering the Auto Transport Company's operations in the State of Oklahoma, effective this date."

This notice was received by the commission on January 21, 1931, as shown by the commission's stamp thereon, and the commission made a pencil notation thereon, "Effective Feb. 10th, 1931."

On November 28, 1931, M. B. Hickman as director of the motor carrier division sent a letter to the American Company acknowledging receipt of such notice of cancellation on January 21, 1931, and stating that the liability ceased on policy 8007 on February 10, 1931.

Moody Patton on receipt of such notice on January 21, 1931, wrote on policy 8007, "Liability ceased 2-8-31." Thereafter M. B. Hickman corrected "2-8-31" to read "2-10-31."

Policy 8007 contained among others the following provisions:

"J. This policy may be cancelled at any time by either party * * * upon written notice to the other stating when thereafter cancellation may be effective; the date of cancellation shall then be the end off the policy period."

No written notice of the cancellation of policy 8007 was given to Reynolds by the American Company, but on January 21, 1931, the American Company orally notified Holland as agent for Reynolds that it desired to cancel policy 8007, and Holland notified Reynolds thereof by telephone. Reynolds instructed Holland to secure another policy. Thereupon Holland as insurance broker for Reynolds applied to R. B. Hickman agent for the Standard Company for a policy. Hickman communicated with the Standard Company and it authorized him to write such policy, but expressly stipulated that the premium therefor should be paid before the policy was delivered. R. B. Hickman thereupon notified Holland that such company would furnish the policy, but upon the express condition that the premium was to be paid before the policy was delivered. Holland informed R. B. Hickman that Reynolds would be in Oklahoma City on February 6, 1931, and would then receive and pay for the policy.

R. B. Hickman then prepared an original and duplicate policy 401,844. He attached form E to both the original and duplicate. He signed form E attached to the duplicate, but not the one attached to the original policy. He placed the figures 1732 on the original policy. Hickman went to Holland's office on February 6, 1931, and waited there for Reynolds until about twelve o'clock noon, when he left. Shortly before Holland had also left his office. Hickman left the original policy with Holland's stenographer with instructions that Reynolds might inspect it, but that neither he nor Holland should take it from the office. While Hickman was absent, Holland returned to his office. The stenographer gave the policy to Holland and he took it to the office of the commission and placed it on Moody Patton's desk. Holland testified that the figures 1732 were not on the policy when he left it on such desk. Prior to one o'clock P. M., R. B. Hickman went to the office of the commission and there saw the policy lying on Mr. Patton's desk. Hickman picked it up and took it back to his office, where he kept it for a few days. On February 12 or 13, 1931, he returned the original and duplicate policies to the Standard Company for cancellation.

M. B. Hickman testified that there was no record in his office of policy 401,844; that he did not write the figures 1732 on such policy; that liability policies or bonds are examined and approved before they are actually filed; that such policy would not have been approved without form E being attached and properly signed; that so far as he knew policy 401,844 was never filed, deposited, or left with the commission.

Moody Patton testified that he had no knowledge of policy 401,844 having been placed on his desk; that he did not put the figures 1732 on such policy, and had no knowledge that such policy was ever in his office.

At the trial Moody Patton wrote the figures 1732, and the sample of his writing was given to the jury for inspection and comparison with the figures 1732 on original policy 401,844.

Over objection counsel for the Transportation Company were permitted to prove by M. B. Hickman that it was customary, when an insurance company desired to cancel a policy, for the broker or agent representing the insured to bring in a new policy and ask to have it stamped and filed, and that then an acknowledgment of notice of cancellation similar to Ex. 5 would be sent out in the regular course of mail, notwithstanding the regu-

lations of the commission and form E, which required twenty days' written notice of the cancellation to the commission.

On February 24, 1931, Geo. D. Garrett, husband of Ethel O'Neal Garrett and father of the other plaintiffs, was killed as the result of the negligence of an employee of Reynolds while operating a motor vehicle for Reynolds in Oklahoma. On October 26, 1931, Mrs. Garrett recovered judgment for $5,000 against Reynolds.

The issues presented three primary questions: (1) Was policy 38,638 canceled on or before February 24, 1931; (2) was policy 8007 canceled before that date; and (3) was policy 401,844 in force and effect as between the Standard Company and the public on that date.

At the close of the evidence each of the defendants moved for an instructed verdict in its favor. The court instructed a verdict for the American Company.

The jury returned a verdict in favor of the Transportation Company and against the Standard Company. Judgment was entered on the verdict. The Standard Company has appealed, and the plaintiffs below have filed a cross-appeal against the Transportation Company and the American Company.

## I.

### Standard Company—Policy 401,844

■ Parties to an insurance contract may stipulate in the application or in the policy that the policy shall not take effect or that the insurer shall not become liable thereunder until the premium is paid. Such a condition is valid and enforceable, MacKelvie v. Mutual Benefit L. I. Co. (C. C. A. 2) 287 F. 660, 663; Curtis v. Prudential I. Co. (C. C. A. 4) 55 F.(2d) 97, 99; New York L. I. Co. v. McCreary (C. C. A. 8) 60 F.(2d) 355; Wells v. Prudential I. Co., 239 Mich. 92, 214 N. W. 308; Reagan v. Philadelphia L. I. Co., 165 Minn. 186, 206 N. W. 162, and a compliance therewith or waiver thereof, even though the policy has been delivered, is essential to render the contract binding and operative with respect to the insurance coverage, Ætna L. I. Co. v. Johnson (C. C. A. 8) 13 F.(2d) 824; Reagan v. Insurance Co., supra; Union Central L. I. Co. v. Taggart, 55 Minn. 95, 56 N. W. 579, 43 Am. St. Rep. 474; Mutual Res. Fund L. Assn. v. Simmons (C. C. A. 1) 107 F. 418; Etenburn v. Metropolitan L. I. Co., 118 Okl. 55, 246 P. 383; Perry v. Security Life & A. Co., 150 N. C. 143, 63 S. E. 679; Penn Mutual L. I. Co. v. Blount, 33 Ga. App. 642, 127 S. E. 892; Bowen v. Mutual L. I.

Co., 20 S. D. 103, 104 N. W. 1040, 1044; Turlington v. Metropolitan L. I. Co., 193 N. C. 481, 137 S. E. 422; Boston Forwarding & T. Co. v. Contractors' Mut. Liability I. Co., 226 Mass. 372, 115 N. E. 494.

In such a case the contract, though in form executed by the parties and delivered, does not spring into life to the extent that an insurance coverage liability attaches until the performance of the condition. Hurt v. N. Y. Life I. Co. (C. C. A. 10) 53 F.(2d) 453, 454. Here the Standard Company and Reynolds, acting through his agent Holland, had stipulated that the policy should not become effective or be delivered until the premium had been paid in cash. As between them the contract of insurance clearly never became effective.

Did it become effective as between the Standard Company and the state of Oklahoma for the benefit of persons who might suffer personal injuries or damage to property caused by the negligence of Reynolds, his agents, or employees?

Form E constitutes the contract of insurance between the insurer and the state of Oklahoma for the benefit of the public. Form E attached to original policy 401,844 was not signed by the Standard Company or by R. B. Hickman as its agent. It is plainly contemplated that form E shall be signed by the insurer, as a designated space is provided therefor.

■ Ordinarily the purpose of a signature to a written contract is to show consent to be bound thereby. It is the customary way of manifesting assent to a written instrument. But where a signature is not required by statute or by express provision of the agreement, assent may be shown in other ways. Henderson v. Henderson, 136 Iowa, 564, 114 N. W. 178, 179; Ramsay Realty Co. v. Ramsay, 135 Iowa, 612, 113 N. W. 468; Vogel v. Pekoc, 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491; Sellers v. Greer, 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589; Reno Electrical Works v. U. S. Fidelity & Guaranty Co., 43 Nev. 191, 183 P. 386; Sammons v. Patterson, 127 Or. 11, 270 P. 499.

The policy proper was signed and form E was attached thereto. If the policy had been delivered to the commission, and if it had treated the policy as in force and effect and acted in reliance on that fact, the absence of the signature of the insurer on form E might not have prevented the contract from binding the Standard Company.

■ Was original policy 401,844 filed with the commission? A paper is filed when it is

delivered to the proper officer and received by him to be kept on file. United States v. Lombardo, 241 U. S. 73, 36 S. Ct. 508, 60 L. Ed. 897; Edward Sales Co. v. Harris Structural Steel Co. (D. C. Me.) 17 F.(2d) 155; Yates v. Tatum, 60 Colo. 484, 155 P. 328; Covington v. Fisher, 22 Okl. 207, 97 P. 615; Wescott v. Eccles, 3 Utah, 258, 2 P. 525; Gallagher v. Linwood, 30 N. M. 211, 231 P. 627, 37 A. L. R. 664.

The evidence of receipt by the proper official was slight. It rested wholly on the fact that filing No. 1732 was on the original policy, and the testimony of Holland that such number was not thereon when it was placed on Patton's desk. As against this there was testimony of Patton and M. B. Hickman that they did not place the filing number thereon; that they had never seen and had no knowledge of such policy, and the further testimony of M. B. Hickman that the policy would not have been accepted for filing with form E unsigned.

█ But, if there was sufficient evidence of filing to submit that issue to the jury, the court in defining filing in its charge wholly omitted the element of receipt for filing by the proper officer. It instructed the jury in substance that if the agent of the Standard Company delivered the policy to Holland, and if Holland left the policy with the commission for filing, that it then became a legal obligation of the Standard Company. This was error.

█ If the policy had not been legally filed when R. B. Hickman recovered it from Patton's desk, he had the right to repossess it, because Holland had undertaken to file it with the commission in violation of his express agreement with R. B. Hickman that it should not become effective or be delivered until the premium had been paid in full.

If the policy had been filed with the commission and if the commission, believing it had been properly delivered and filed, had acted, in reliance thereon, the Standard Company might have been estopped to deny that such policy was in force and effect, because R. B. Hickman by leaving the policy in Holland's office, placed it in the latter's power to deceive and mislead the commission into so believing and acting. But the commission did not rely or act upon such assumption. Employees of the commission, charged with the handling of such matters, testified as witnesses for plaintiffs that the commission had no knowledge of policy 401,844, and had not relied or acted thereon.

We conclude that the court should have directed a verdict in favor of the Standard Company.

## II.

### Transportation Company—Policy 38,638

█ Rule 32 of the commission provides that no "policy shall be altered by substitution of another for the original risk without notice to and approval in writing by the Commission." Form E, adopted by commission regulation, provides that "the policy to which this endorsement is attached shall not terminate either by expiration or cancellation until after twenty days' notice of such termination in writing by the insurer to the Corporation Commission."

The Transportation Company contends that Ex. 5 is evidence of notice of cancellation, and the court so instructed the jury. It charged the jury, in substance, that if the original of Ex. 5 was genuine and had been issued by an officer of the motor carrier department of the commission, that it would be evidence warranting the finding that notice of cancellation was given and the policy canceled.

While Ex. 5 may have been evidence that notice of cancellation was given, it was not evidence that such notice was in writing. Furthermore, Holland testified that he delivered the original of Ex. 5, with the blanks filled in except for the signature of the commission, together with policy 8007 to M. B. Hickman, and stated to the latter that policy 8007 was filed in lieu of policy 38,638. Thus it appears that the notice of cancellation was oral and not in writing, as required by the regulation of the commission.

█ It is true M. B. Hickman testified that it was the practice, when an insurance company desired to cancel a policy, for the broker or agent representing the insured, to bring in a new policy and ask to have it stamped and filed, and for the commission then to send out in the regular course of mail an acknowledgment of receipt of notice of cancellation of the old policy.

But the rules and regulations of the commission, made in conformity to the statute, had the same force and effect as if they had been incorporated into the statute itself. Caha v. United States, 152 U. S. 211, 14 S. Ct. 513, 38 L. Ed. 415; Ex parte Reed, 100 U. S. 13, 25 L. Ed. 538.

█ The regulations here in question were not mere rules of procedure which the commission might waive. MacFayden v. Public Utilities Corp., 50 Idaho, 651, 299 P. 671; Gillis v. Public Service Comm. of Pa., 105 Pa. Super. Ct. 389, 161 A. 563. On the contrary they were substantial provisions, and became a part of the contract between the

insurer and the state for the protection of the public. Their purpose was to make certain that motor carriers operating on the public highways of Oklahoma should at no time be without insurance for the protection of the public. While the commission might rescind such regulations, we doubt that it could waive them while they remained in force. Certainly, administrative assistants such as Patton and M. B. Hickman had no power to waive such regulations.

The need for such regulations and for strict adherence to their requirements, is forcibly demonstrated by the facts in this case. Here we have a claim of oral notice of cancellation by the filing of a substituted policy which was shortly canceled. Policy 38,638 in the meantime remained in the files of the commission with no written evidence of any character in the files or records of the commission showing its cancellation. As a consequence no steps were taken by the commission to require a new policy or to cancel the Reynolds permit, because we must assume that, had notice of such cancellation been given in accordance with the regulations, the commission would have performed its legal duty and have required a new policy, or ordered cancellation of the permit.

We conclude that the court erred in admitting evidence of the custom or practice to accept oral notices of cancellation.

We further conclude that the charge of the court was erroneous in so far as it permitted the jury to find notice of cancellation of policy 38,638 other than by written notice given in accordance with regulation 32 and form E.

### III.

#### American Company—Policy 8007

The statement in the notice of cancellation fi.ed by the American Company that such notice was to become effective as of its date rather than twenty days after its receipt by the commission, did not in our opinion vitiate the notice.

Surplusage which does not mislead or prejudice does not vitiate a notice. Burroughs v. City of Lawrence, 116 Kan. 573, 227 P. 328. The commission was not misled by such statement. It disregarded such statement as surplusage, and treated the notice as effective at the expiration of twenty days in accordance with its regulation. This in our opinion was proper. See Farmers Gin Co. of Manitou v. Jones, 146 Okl. 79, 293 P. 527; Gramo v. Greenpoint Contracting Co., 209 App. Div. 250, 204 N. Y. S. 419.

In order to effect a cancellation of such policy as between the American Company and the state, it was not essential for the American Company to give written notice of cancellation of such policy to Reynolds. The requirements as to notice of cancellation of the contract, as between the American Company and the state, were fully covered by the provisions of form E, and were complied with. The provisions in the policy proper, with respect to notice to the insurer, had only to do with the cancellation of the contract as between the American Company and Reynolds. The rights of Reynolds under the policy, if any, are not involved, and are not open to review. Furthermore, Reynolds received a verbal notice of the cancellation from the American Company without objection, and acted thereon.

The judgment is affirmed as to the American Company, and in all other respects reversed with instructions to grant the Standard Company and the plaintiffs a new trial. Let the costs be assessed against the plaintiffs and the Transportation Company.